**Jesse BROOKS, Plaintiff,**

**v.**

**Herbert MILLER, Individually and the City of Artesia, a Municipal Corporation, Defendants.**

**No. EC84–397–NB–D.**

United States District Court, N.D. Mississippi, E.D.

Sept. 30, 1985.

Bennie L. Jones, Jr., West Point, Miss., for plaintiff.

David A. Smith, Thomas C. Harvey, Jr., Robert L. Lancaster, Columbus, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

Plaintiff Jesse Brooks brought this action against the defendants, The City of Artesia, Mississippi ("the City") and Herbert Miller, under 42 U.S.C. § 1983 (1981) and the Sixth and Fourteenth Amendments to the United States Constitution to recover money damages for an alleged deprivation of constitutional rights. Jesse Brooks also asserts pendent state claims of assault and intentional infliction of emotional distress. The City and Herbert Miller have separately moved to dismiss pursuant to Fed.R. Civ.P. 12(b)(6). Because the parties have submitted, and this court has considered, affidavits in support of their memoranda, the motions will be treated as motions for summary judgment. Fed.R.Civ.P. 12(c). For purposes of judicial economy, the court will address both motions in this opinion.

The facts, viewed in the light most favorable to the non-moving party, Brooks, are as follows. On the evening of July 31, 1984, the defendant Herbert Miller and family were returning home after a Wednesday night revival meeting at his church. As they drove down the main avenue of the City of Artesia, Herbert Miller observed several individuals standing on the street corner drinking what he believed to be beer. Miller stopped his car, walked over to the individuals and informed them that drinking beer on a public street was a crime. Furthermore, he requested that they either leave the street or return to the establishment that sold them the beer. He then returned to his car but remained to watch over the scene and noticed that another individual was also apparently drinking beer. Miller approached this individual, Jesse Brooks, notified him that drinking beer on a public street was a crime, and asked Brooks for his name, which Brooks declined to divulge. Someone standing with Brooks asked Miller to identify himself, whereupon Miller replied that he was

the Acting Mayor of Artesia and a Member of the Board of Aldermen. Miller threatened to swear out an affidavit against Brooks and left.

Several minutes later Miller returned to the scene and resumed his conversation with Brooks. This time, however, Miller was armed with a loaded shotgun, presumably to facilitate a more productive conversation. He approached Brooks with the gun to his side, stopped approximately ten to fifteen feet away, and again asked Brooks to identify himself. Brooks responded by inquiring as to whether Miller really intended to shoot him merely because of his refusal to disclose his name. At this point, Miller raised the barrel of the gun and fired. The buckshot struck the ground immediately in front of Brooks and also struck Brooks in the legs and chest. Miller then reloaded the shotgun, aimed the barrel directly at Brooks and again asked him for his name, to which request Brooks complied. Thereupon, Miller picked up the spent shell and left. Brooks was then taken to the emergency room at the Golden Triangle Regional Medical Center in Columbus, Mississippi and received treatment for his wounds.

Brooks asserts that Herbert Miller, in his capacity as Acting Mayor and Alderman for the City of Artesia, intentionally violated his sixth amendment right to be "informed of the nature and cause of the accusation against him," and his fourteenth amendment right not to be deprived of life, liberty and property without due process of law. Plaintiff also alleges that the City of Artesia is liable under section 1983.

### I. Herbert Miller

#### (a) Procedural Due Process

The defendant Miller asserts that the injuries allegedly sustained by Brooks do not amount to a deprivation of life, liberty or property without due process of law and thus he is not liable under section 1983. It is clear that in order to state a claim under 42 U.S.C. § 1983, a plaintiff must submit proof tending to establish both that the conduct complained of is committed by a person acting under color of state law and that the conduct deprived him of rights, privileges or immunities secured by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420, 428 (1981).

According to the United States Supreme Court in *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1383–84 (1941), a person acts under color of state law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law." *See also Monroe v. Pape*, 365 U.S. 167, 184–87, 81 S.Ct. 473, 482–84, 5 L.Ed.2d 492, 503–05 (1961). In the present case, plaintiff points to Miss.Code Ann. § 21–15–9 (1972) in order to demonstrate that Miller, as Acting Mayor, was charged with an affirmative duty to oversee the law enforcement activities of the City. The statute provides:

> The Mayor shall be active and vigilant in enforcing all laws and ordinances for the government of the municipality, and shall cause all other officers to be dealt with promptly for any neglect or violation of duty.

Thus, the grant of power embodied in Miss. Code Ann. § 21–15–9, at least for the purposes of this summary judgment motion, raises an inference that Miller was acting under color of state law at the time the incident with Brooks took place. The plaintiff has therefore satisfied the "under color" prong of the *Parratt* test.

The plaintiff Brooks also asserts that Miller has deprived him of rights secured to him under the Constitution of the United States. Specifically, it is contended that Miller intentionally deprived Brooks of life, liberty and property without due process of law.

Of course, the due process clause, as a constitutional right, protects individuals only from government action, that is, "state action." Accordingly, the plaintiff, as a prerequisite to maintaining his due process claim, must demonstrate that Mil-

ler's conduct constituted state action. In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749–50, 73 L.Ed.2d 482, 490 (1982), the United States Supreme Court made clear that in a section 1983 action brought against a state official, the "under color of state law" requirement and the "state action" requirement of the fourteenth amendment are identical. Thus, in the present case, because this court has determined that Miller was acting under color of law, "state action" has also been found to exist.

Considering the merits of Brooks' due process claim, this court must now ascertain whether the particular actions undertaken by Miller may have amounted to a violation of the procedural due process protections afforded Brooks and thus cognizable under section 1983. Our first task is to examine what process was due Brooks in this circumstance.

 A mere deprivation of a life, liberty or property interest suffered at the hands of an individual acting under color of state law is insufficient to establish a violation of the Due Process Clause of the Fourteenth Amendment. Instead, the deprivation must be without due process. As a general proposition, due process requires some sort of a pre-deprivation hearing. *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 5705–06, 33 L.Ed.2d 548, 556–57 (1972). However, in cases where the particular deprivation is the result of random and unauthorized conduct by state employees, rather than an "established state procedure," *see Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 71 L.Ed.2d 265, 277–78 (1982), a pre-deprivation hearing is obviously impractical. In these cases, whether the conduct inflicting the deprivation may be characterized as negligent or intentional, an adequate post-deprivation remedy will satisfy due process. *See Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393, 407 (1984) (intentional conduct); *Parratt v. Taylor,* 451 U.S. at 541, 101 S.Ct. at 1916, 68 L.Ed.2d at 432 (negligent conduct). In addition, the analysis

employed by courts to determine what due process may require in a given case is the same regardless of whether the alleged deprivation involves life, *see State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1147 (7th Cir.1983), liberty, *see Thibodeaux v. Bordelon,* 740 F.2d 329, 337 (5th Cir.1984), or property, *see Parratt v. Taylor,* 451 U.S. at 541, 101 S.Ct. at 1916, 68 L.Ed.2d at 432.

 In the case *sub judice,* the plaintiff alleges that he was intentionally deprived of life, liberty and property without due process by Herbert Miller, who, at the time of the incident, was acting pursuant to his official duties as Acting Mayor. Although Miller's actions may be deemed official action undertaken pursuant to official municipal policy and thus "authorized" conduct, the action is nonetheless random in nature in the sense that the action was not taken pursuant to "established state procedure." There is no proof offered in this case that a state system or procedure itself worked a deprivation of plaintiff's liberty interest. All that is before this court is the allegation, supported by sufficient evidence, that a single, isolated, and arguably official act by Miller inflicted the particular injury herein complained of. Thus, it would seem "impractical" in this situation to have afforded Brooks a pre-deprivation hearing. Therefore, because adequate post-deprivation remedies are available to the plaintiff in the form of the state claims of assault and intentional infliction of emotional distress, the plaintiff may not pursue his procedural due process claim under section 1983. Accordingly, defendant Miller's motion for summary judgment on this claim is well taken and should be granted.

**(b) Substantive Due Process**

 The due process clause, however, also imposes substantive limitations on state action, which may be implicated even where the state procedures available to an individual have been found to be adequate. *See Parratt v. Taylor,* 451 U.S. at 552–53, 101 S.Ct. at 1921–22, 68 L.Ed.2d at 439–40 (Powell, J. concurring). In an effort to define the nature of the substantive guar-

antees implicit in the due process clause, Justice Frankfurter, in *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183, 188 (1952), stated:

> Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cordozo twice wrote for the Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' ... or are 'implicit in the concept of ordered liberty.'

*Id.* Thus understood, due process of law, in its substantive sense, is not susceptible to precise definition. Instead, a case-by-case inquiry must be undertaken to determine whether, as in this case, the essentially tortious conduct of an individual acting under color of state law and which conduct is deemed to be state action has transgressed the constitutional parameters established by the substantive guarantees of the due process clause.

▆▆▆ Generally, the due process clause is implicated where conduct causing a deprivation literally "shocks the conscience" and is "brutal." *Johnson v. Glick,* 481 F.2d 1028, 1032–33 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). In making this determination, this court is aided by the standard formulated in *Hamilton v. Chaffin,* 506 F.2d 904, 909 (5th Cir.1975):

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*See also Raley v. Fraser,* 747 F.2d 287, 289 (5th Cir.1984). Applying the above formulation to the facts in this case, this court, for the purposes of this summary judgment motion, cannot hold as a matter of law that Miller's actions were not "brutal" or "shocking to the conscience." Here, Miller attempted to prevent what he believed to be a continuing violation of a city ordinance. Finding that his verbal requests were unsuccessful, Miller then resorted to the display and use of force. There is no indication that Brooks ever threatened Miller; therefore, there seems to be no apparent justification for the injury inflicted on Brooks. Accordingly, defendant Miller's motion for summary judgment as to plaintiff's substantive due process claim is not well taken and should be denied.

### (c) Sixth Amendment

▆▆▆ The defendant Miller also asserts that summary judgment is appropriate on plaintiff's sixth amendment claim. In his complaint, the plaintiff asserts a violation of his sixth amendment right to be "informed of the nature and cause of the accusation against him." However, the sixth amendment by its terms and according to its judicial gloss, is applicable only to adversary criminal proceedings. *See United States v. Zucker,* 161 U.S. 475, 481, 16 S.Ct. 641, 643, 40 L.Ed. 777, 780 (1896); *Reilly v. Leonard,* 459 F.Supp. 291, 301 (D.C.Conn.1978). There is no allegation in the record before this court that Brooks was ever subject to a criminal proceeding, and it would indeed be farfetched to characterize the confrontation between Miller and Brooks on a public street as an adversary criminal judicial proceeding. Accordingly, defendants' motion as to the sixth amendment claim is well taken and should be granted.

### II. City of Artesia

The defendant City asserts that plaintiff has failed to state a claim for relief under section 1983 against the City because of a failure to allege a causally related policy or custom regarding the actions here in question. The City contends that the claim as stated amounts to an assertion of municipal liability under a theory of respondeat superior which the City contends is the incorrect standard for municipal liability under section 1983.

Without question respondeat superior may not be the basis for municipal liability. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611, 635–38 (1978). Instead, as established by *Monell,* a municipality may be liable where it is shown that a pervasive custom or official policy "caused" a municipal employee acting under color of the policy to violate another's constitutional rights. *Id.* at 692, 98 S.Ct. at 2036, 56 L.Ed.2d at 636. Thus, the pertinent question is whether the defendant Miller was acting under color of official municipal policy when he allegedly shot the plaintiff.

In *Bennett v. City of Slidell,* 735 F.2d 861 (5th Cir.1984), the Fifth Circuit, in succinct fashion, defined "official policy" for purposes of establishing municipal liability under section 1983:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such customs must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.* at 862.

■■■■ It is beyond doubt that a municipal official's actions or decisions, in those areas in which he is considered to be final authority or ultimate repository of municipal power, may be attributed to the municipality for purposes of establishing municipal liability under section 1983. *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980). Thus, in order to ascertain whether the particular action of a municipal official constitutes official policy we must examine whether the official had

been granted policy-making authority in the areas in which the official undertook to act. In the present case, it is admitted that Miller was, at the time of the incident, Acting Mayor and Member of the Board of Aldermen of the City of Artesia. As Mayor, Miller is delegated, by statute, certain duties. Specifically, Miss.Code Ann. § 21–15–9 charges the Mayor with the responsibility of remaining "active and vigilant in enforcing all laws and ordinances for the government of the municipality, and shall cause all other officers to be dealt with promptly for any neglect or violation of duty." The rather broad authority delegated to the mayor in the area of law enforcement at least raises the presumption that Miller, while he was Acting Mayor, possessed policy-making authority as that term is defined in *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984), as to the area of law enforcement for the City of Artesia. Certainly, the defendant City has not indicated otherwise. Thus, any action which Miller undertook to enforce the laws and ordinances for the City may be properly considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the City may be held liable under section 1983. *Monell v. New York City Department of Social Services,* 436 U.S. at 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 637–38; *Familias Unidas v. Briscoe,* 619 F.2d at 404. Accordingly, the City's motion for summary judgment is not well taken inasmuch as the court finds that genuine issues of material fact exist, including but not limited to whether Miller's actions may constitute the official policy of the City of Artesia. However, defendant City's motion for summary judgment as to plaintiff's claims for punitive damages under section 1983 is well taken and should be granted since municipalities are immune from punitive damages under section 1983. *See City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 635 (1981).

■■■■ Furthermore, the defendant City raises the defense of sovereign immunity in regard to the state law claims of assault and intentional infliction of emotional distress. Because sovereign immunity re-

mains a viable doctrine in the State of Mississippi by virtue of Miss.Code Ann. § 11–46–1 *et seq.*, the court finds that the motion of the defendant City for summary judgment as to these claims is well taken and should be granted.

Let an order issue accordingly.

### ORDER

In accordance with a memorandum opinion this day issued with regard to the defendants' motions to dismiss which were treated by the court as motions for summary judgment, it is hereby ORDERED:

That defendant Herbert Miller's motion as to plaintiff's claims alleging violations of procedural due process and the sixth amendment brought under 42 U.S.C. § 1983 is GRANTED;

That in all other respects defendant Herbert Miller's motion is DENIED;

That defendant City of Artesia's motion as to plaintiff's state law claims of assault and intentional infliction of emotional distress and prayer for punitive damages is GRANTED; and

That in all other respects defendant City of Artesia's motion for is DENIED.