*In re* QUEJA presentada contra el SECRETARIO DE JUSTICIA, LIC. HÉCTOR RIVERA CRUZ.

*Número:* AB-87-45          *Resuelto:* 7 de junio de 1990

*Hon. José Antonio Fusté*, peticionario; *Héctor Rivera Cruz, pro se.*

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El 16 de noviembre de 1987 el Subsecretario del Tribunal de Distrito Federal para el Distrito de Puerto Rico nos remitió copia certificada de una resolución de esa misma fecha emitida por el Juez de Distrito federal, Hon. José A. Fusté, bajo el epígrafe *In re: Secretario de Justicia*. En dicha resolución el Hon. Juez Fusté imputó al Secretario de Justicia, Hon. Héctor Rivera Cruz, violaciones a los cánones del Código de Ética Profesional Núm. 8 (criterio general), Núm. 9 (conducta de los abogados ante los tribunales) y Núm. 14 (publicidad sobre pleitos pendientes). 4 L.P.R.A. Ap. IX, Cs. 8, 9 y 14.([1])

---

([1]) Los cánones del Código de Ética Profesional Núm. 8, Núm. 9 y Núm. 14 disponen lo siguiente:

"*Canon 8. Actos impropios de los clientes*

"*Criterio general*

"La buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal. Le corresponde a todo abogado procurar que prevalezca siempre en los tribunales un ambiente de decoro y solemnidad laborando por mejorar la calidad de la justicia que en éstos se imparte. Para lograr el más adecuado desenvolvimiento y desarrollo del proceso judicial, el miembro de la profesión jurídica debe realizar todas las gestiones propias y legales que estén a su alcance, observando especialmente los cánones siguientes, que señalan algunos deberes particulares que surgen de este criterio general.

"*Canon 9. Conducta del abogado ante los tribunales*

"El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

La queja tiene su génesis en unas expresiones emitidas el 4 de noviembre de 1987 por el Secretario de Justicia, Hon. Héctor Rivera Cruz, mientras actuaba como Gobernador interino. Estas expresiones se referían a las actuaciones del Honorable Juez Fusté en el caso *Cordero v. De Jesús Méndez*, 867 F.2d 1 (1er Cir. 1989), que se estaba ventilando en el tribunal federal.

Las expresiones del Secretario de Justicia, Hon. Héctor Rivera Cruz, que sirven de base a la queja fueron las siguientes:

Bueno, sencillamente, esto, a nuestro juicio, ha sido un atropello por parte del tribunal federal, específicamente del juez que ordenó el encarcelamiento del alcalde y a nuestro juicio es un abuso de poder de la jurisdicción federal[;] de lo que se trata es de un alcalde que tiene un caso muy meritorio que fue visto en un tribunal federal y que está en apelación en el Circuito de Boston —po[rq]ue hay mérito en el caso. En el entretanto el juez desea y ordena al alcalde que pague alrededor de $200,000 a unos empleados que fueron cesanteados que ya el juez sí logró reponerlos. . . .(2) (Escolio omitido y énfasis suplido.) Resolución de 16 de noviembre de 1987, págs. 3–4.

En su resolución, el Honorable Juez Fusté analiza las expresiones vertidas por el Secretario de Justicia y concluye que éstas "constituyen un ataque injustificado contra la sana administración de la justicia[; *n*]*o se trata de expresiones constitucionalmente protegidas* por cuanto el interés social de mantener la integridad

---

"El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

. . . . . . . .

"*Canon 14. Publicidad sobre otros pleitos pendientes*

"El abogado debe abstenerse de publicar o de cualquier manera facilitar la publicación en periódicos o a través de otros medios informativos, detalles u opiniones sobre pleitos pendientes o que señalen la probabilidad de litigios futuros, pues tales publicaciones pueden obstaculizar la celebración de un juicio imparcial y perjudicar la debida administración de la justicia. En caso de que las circunstancias extremas de un pleito específico justifiquen ofrecer una información al público, será impropio el hacerlo anónimamente. Una referencia unilateral o *ex parte* a los hechos de un caso debe limitarse a citas tomadas de los récords y documentos archivados en los tribunales; pero aun en estos casos extremos, es preferible abstenerse de ofrecer tales declaraciones." 4 L.P.R.A. Ap. IX.

(2) En apelación, el Tribunal Federal de Apelaciones para el Primer Circuito desestimó la apelación en cuanto al desacato por académico (*moot*). *Cordero v. De Jesús-Méndez*, 867 F.2d 1, 21–22 (1er Cir. 1989).

y la confianza pública en los tribunales y en los jueces es mayor que el derecho de expresarse injuriosamente contra los tribunales en los cuales el abogado participa". (Énfasis suplido.) Resolución de 16 de noviembre de 1987, pág. 5.

Siguiendo el trámite que normalmente se le da a las quejas presentadas ante este Tribunal, el Secretario del Tribunal la remitió al Secretario de Justicia para que éste informara "sus comentarios y reacciones en torno" a la misma. El 15 de enero de 1988 el Secretario de Justicia compareció e informó que "[l]as manifestaciones. . . a que se refiere la queja constituyen un fragmento aislado de toda la amplia información que juzgué necesario dar a la ciudadanía, en mi carácter de gobernador interino de Puerto Rico, sobre el encarcelamiento por desacato civil del Alcalde de Moca, Sr. Juan [D]e Jesús Méndez, como resultado de órdenes dictadas por el Honorable Juez Fusté en el caso civil Núm. 85-0815 ante la Corte de Distrito Federal"; que no está admitido a postular en el foro federal y que sólo como una formalidad es que se incluye su nombre en los casos que allí se ventilan y en los que el Estado Libre Asociado de Puerto Rico es parte, y que los cánones "no son aplicables a la conducta de abogados ante la Corte de Distrito Federal para el Distrito de Puerto Rico", ya que esta conducta se rige "por las reglas de responsabilidad profesional adoptadas por la Corte de Distrito Federal". También adujo que aunque aplicaran los cánones, sus expresiones no los violaron, ya que éstos "deben ser interpretados restrictivamente para proteger el derecho fundamental de expresión garantizado por la Sec. 4 del Art. II de la Constitución [del Estado Libre Asociado] de Puerto Rico[, L.P.R.A., Tomo 1,] y por la Primera Enmienda de la Constitución de los Estados Unidos[, L.P.R.A., Tomo 1, y que la] libertad de expresión existe *precisamente para mantener un clima abierto para la discusión franca y vigorosa de asuntos de interés público y de la conducta de todos los funcionarios públicos*".

La queja presentada por el Honorable Juez Fusté requiere que analicemos el alcance de nuestra jurisdicción disciplinaria en el contexto de la separación de poderes.

■ Los cánones del Código de Ética Profesional aplican por igual a los abogados que ejercen su profesión en la práctica privada y a los que ocupan cargos públicos. *In re Secretario de Justicia*, 118 D.P.R. 827 (1987); *In re Ríos*, 112 D.P.R. 353 (1982). Sin embargo, el ejercicio de nuestra jurisdicción disciplinaria, cuando el abogado es también un funcionario de la Rama Ejecutiva o de la Rama Legislativa, entraña necesariamente considera- raciones constitucionales por tocar muy de cerca el delicado balance de poderes que garantiza nuestra Constitución.

Recientemente, en *Silva v. Hernández Agosto*, 118 D.P.R. 45, 57 (1986), expresamos que:

> La relación entre los poderes del Gobierno debe ser dinámica y armoniosa. Su éxito depende de que cada un[o] acepte y respete la autoridad de l[o]s otr[os] y entienda la interrelación de sus funcio- nes. Su perdurabilidad requiere que cuando haya conflicto sobre el alcance de los poderes constitucionales de cualquiera de ell[o]s, los tribunales intervengan con *prudencia* y *deferencia* para aclarar los contornos de la Constitución y facilitar la resolución de las diferen- cias. (Énfasis suplido.) Véanse, también: *Hernández Agosto v. López Nieves*, 114 D.P.R. 601, 621 (1983); *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 759–760 (1977).

En *In re Rodríguez Torres*, 106 D.P.R. 698, 723–724 (1978), al dejar sin efecto la regla de incompatibilidad entre el ejercicio de la abogacía ante los tribunales y el pertenecer a una comisión del Senado que tenga a su cargo la consideración de nombramientos de jueces o fiscales, expresamos lo siguiente:

> . . .[N]uestros poderes también conocen fronteras. La propia vas- tedad de los poderes confiados a la Rama Judicial exige moderación y cautela en su ejercicio. Existe considerable peligro en utilizar el poder de revisión judicial más allá de lo estrictamente necesario. Cuando se trata del ejercicio de un poder inherente hay motivos para redoblar las precauciones.
>
> Nada de lo expresado significa que un tribunal puede o debe rehuir o achicar sus funciones de principal intérprete y custodio de la Constitución. Lo que significa es que dentro de nuestro sistema de separación de poderes, donde la relación entre éstos es necesa- riamente de orden dinámico, las tres ramas que integran el gobierno viven en posición de continuo conflicto potencial que s[ó]lo

puede evitarse, por el bien común, mediante el empleo por cada cual de extrema circunspección y cuidado en el ejercicio de sus atribuciones. (Citas omitidas.)

■ El abogado que se desempeña en un cargo público debe lealtad a la agencia en la cual trabaja sin olvidar, desde luego, las normas éticas:[3]

> In a system of checks and balances it is not [the] responsibility of an agency attorney to represent the interests of Congress or the Court. Those departments have their own "constitutional means and personal motives" to protect their prerogatives. As a result, the constitutional system presumes —indeed, depends upon— the institutional loyalty of its lawyers. Congress has manifold opportunities —including powers of purse, oversight, investigation, and impeachment— to punish presidents or cabinet officers who do not administer the law to its liking. It does not need the allegiance of agency attorneys to fulfill its constitutional functions. The Court, for its part, has the power to issue judgments in controversies that come before it, and, in appropriate cases, to order the executive branch to take or refrain from taking specifications. The Court's opinions are backed by substantial political capital and institutional prestige, such that the executive branch would inevitably suffer political costs —not to mention a loss of credibility in the Court itself— if it acted contrary to prior opinions. (Escolio omitido.) G.P. Miller, *Government Lawyers' Ethics in a System of Checks and Balances,* 54 (Núm. 4) U. Chi. L. Rev. 1293, 1296–1297 (1987).

■ En *In re Secretario de Justicia,* supra, pág. 850, señalamos que nos abstendremos de ejercer nuestra jurisdicción disciplinaria en quejas contra el Secretario de Justicia cuando, "de su faz: (1) el promovente no justifique satisfactoriamente un interés legítimo ético y perjuicio real directo; (2) el asunto, aunque de carácter ético, sea prematuro; (3) los hechos no estén debidamente documentados o sustanciados, o (4) no [se trata de] materia

---

[3] La Ley Núm. 12 de 24 de julio de 1985, conocida como Ley de Ética Gubernamental del Estado Libre Asociado, 3 L.P.R.A. sec. 1801 *et seq.,* establece un código de ética aplicable a los funcionarios y empleados de la Rama Ejecutiva. E. Orsini Zayas, *Sobre conflicto de intereses: guías para su identificación,* diciembre de 1987, págs. 2–3 (trabajo inédito).

*ético-adjudicable* por corresponder . . . al debate del Poder Legislativo o Ejecutivo, o pertenecer a la arena de la política partidista". (Énfasis en el original.)

■ Reconocimos también la compleja labor del Secretario de Justicia y sus múltiples funciones: "También tenemos presente que algunas de las funciones adicionales del Secretario de Justicia [apuntadas] —integrante del Gabinete, segundo en sucesión al Gobernador y miembro de varias juntas y organismos— *pueden, directa o indirectamente, involucrarlo, o moverlo a involucrarse, en las polémicas de asuntos públicos polarizados, impregnados o no de contenido político-partidista, que trascienden la visión tradicional del papel de principal abogado-asesor gubernamental.* La línea es tenue, y por ende, a veces difícil de separar el pronunciamiento a título clásico de Secretario de Justicia (abogado-asesor), y de aquel que irradia como miembro del Gabinete, o una junta, o Gobernador interino." (Énfasis suplido.) *In re Secretario de Justicia,* supra, págs. 847–848.

Analicemos las expresiones del Honorable Rivera Cruz en su justa perspectiva, desde su posición como Gobernador interino y dentro del marco de la separación de poderes.

Las declaraciones del Secretario de Justicia se producen mientras se desempeñaba como Gobernador interino. Las mismas no fueron hechas como abogado de las partes en el caso ante el Tribunal de Distrito federal. El propio Honorable Juez Fusté reconoce que el Secretario de Justicia, Honorable Rivera Cruz, no está admitido a postular en dicho foro y su comparecencia se limita a incluir su nombre en los documentos suscritos por abogados autorizados a ejercer en el tribunal federal.(4)

Ahora bien, de ejercer nuestra jurisdicción disciplinaria en este caso estaríamos disciplinando no al Secretario de Justicia,

---

(4) Si se considerara que el Secretario de Justicia, Honorable Rivera Cruz, es abogado de récord en el tribunal federal, estaríamos ante una situación en que dicho tribunal podría apropiadamente salvaguardar la debida administración de la justicia en su foro frente a lo que considera expresiones que afectan un caso que se encuentra pendiente en dicha jurisdicción, o una crítica que entiende rebasa el derecho a la libertad de expresión y afecta la dignidad del tribunal.

sino al Gobernador interino, al Primer Ejecutivo de Puerto Rico. Entendemos que las expresiones vertidas no justifican esta clase de intervención con la Rama Ejecutiva. Especialmente si consideramos que las mismas fueron hechas en torno a un asunto de gran interés público en ese momento que goza, pues, de protección constitucional. *Connick v. Myers*, 461 U.S. 138, 142, 148 (1983). Aun cuando discrepásemos del criterio del Secretario de Justicia, el poder compartido en nuestra democracia es una llamada al consenso y no una invitación a que una rama de gobierno le imponga a otra su criterio. *Hernández Agosto v. López Nieves*, supra. Reiteramos lo expuesto en *Silva v. Hernández Agosto*, supra:

> La relación entre los poderes del Gobierno debe ser dinámica y armoniosa. Su éxito depende de que cada un[o] acepte y respete la autoridad de l[o]s otr[os] y entienda la interrelación de sus funciones. Su perdurabilidad requiere que cuando haya conflicto sobre el alcance de los poderes constitucionales de cualquiera de ellos, los tribunales intervengan con prudencia y deferencia para aclarar los contornos de la Constitución y facilitar la resolución de las diferencias.

En vista de todo lo expuesto, ordenamos el archivo de la queja presentada por el Honorable Juez Fusté contra el Secretario de Justicia, Hon. Héctor Rivera Cruz.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Negrón García concurre con opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

---

La Regla 211.4 de las Reglas Locales para el Tribunal de Distrito Federal establece el procedimiento disciplinario para los abogados que ejercen en dicho foro. En *In re Sánchez-Ferreri*, 620 F. Supp. 951, 952 (1985), se dijo lo siguiente:

"It is the general rule that discipline in the federal courts does not automatically follow from discipline in the state courts *since the state and federal judicial systems are autonomous.* By the same token, a federal court has no power to review a disciplinary decision rendered by a state court.

"Indeed, it is recognized that, an attorney must strictly comport himself in a professional and ethical manner in order to maintain good standing in any federal bar; he must exhibit fair, private and professional conduct. Anything less is adequate reason to revoke his right to continue as a member in good standing of the bar." (Citas omitidas y énfasis suplido.)

—o—

Opinión concurrente del Juez Asociado Señor Negrón García.

## I

Otra vez rechazamos la posición del licenciado Rivera Cruz de que "para fines éticos debemos fraccionar su persona y establecer el binomio abogado-Secretario de Justicia . . . . En último análisis su condición de abogado es inseparable del cargo de Secretario de Justicia y constituye la cualidad esencial e inherente que le permite ser el abogado-asesor principal del Estado. Como tal, la misión del abogado y sus obligaciones deontológicas no se agotan al jurar como Secretario de Justicia". (Escolio omitido.) *In re Secretario de Justicia*, 119 D.P.R. 363, 396–398 (1987). Y, lógicamente, tampoco se crea un vacío y desaparecen sus deberes éticos, por que breve e incidentalmente se desempeñe interinamente como Primer Ejecutivo.

Reconocemos que en las funciones adicionales de su cargo, la "línea es tenue, y por ende, a veces difícil de separar el pronunciamiento a título clásico de Secretario de Justicia (abogado-asesor), y de aquel que irradia como miembro del Gabinete, o una junta, o Gobernador interino". *In re Secretario de Justicia*, 118 D.P.R. 827, 848 (1987).

Sin embargo, los antecedentes en este asunto y el texto íntegro de sus manifestaciones nos impiden compartir la tesis de que las mismas —por haberse producido mientras era Gobernador interino— inhiben per se el ejercicio original de nuestra jurisdicción disciplinaria. En las presentes circunstancias, la doctrina de separación de poderes no anula automáticamente —como sugiere la opinión *Per Curiam*— nuestra facultad en el ámbito ético. *In re Ríos*, 112 D.P.R. 353 (1982).

Tampoco es persuasivo el argumento del licenciado Rivera Cruz en el sentido de que la queja es improcedente, porque no es un abogado admitido a postular en el foro federal y sólo figurar su nombre en los escritos judiciales del Estado como una simple "formalidad".

No albergamos duda de que sus manifestaciones fueron vertidas mientras era *abogado de récord,* aunque fuese *nominal,* en la acción civil contra el Alcalde de Moca, Sr. Juan De Jesús Méndez. Tomamos conocimiento judicial de que el licenciado Rivera Cruz solicitó permiso para comparecer oficialmente en pleitos ante dicho foro y que en ese carácter *formal* fue autorizado únicamente a incluir su nombre en los documentos suscritos por otros abogados allí admitidos, por razón del mandato de ley que ostenta de representar al Estado (3 L.P.R.A. sec. 72) —*Feliciano v. Barceló,* 605 F. Supp. 967, 969 (1985)— y "en deferencia al cargo que ocupa en la jerarquía constitucional ejecutiva del [G]obierno . . .". Resolución de 16 de noviembre de 1987, pág. 3.

## II

Aclarados estos extremos, un análisis concienzudo y desapasionado de las expresiones del licenciado Rivera Cruz refleja —como característica esencial— una nota de protesta y crítica limitada a la decisión del Juez federal, Hon. José A. Fusté. Según su percepción, el encarcelamiento del Alcalde De Jesús Méndez por desacato civil constituyó "un atropello" y "abuso de poder" del órgano judicial.[1]

La propia naturaleza de este lenguaje, más que el cargo de su interlocutor que fungía accidental y efímeramente como Gobernador interino es, a juicio nuestro, el verdadero *ratio decidendi* para archivar la queja conforme la doctrina sentada en *In re Cardona Álvarez,* 116 D.P.R. 895, 904 (1986). Allí, en lo atinente decidimos que "el respeto hacia los tribunales, y su exaltación como uno de los postulados deontológicos más hermosos, no

---

[1] En lo pertinente, las expresiones fueron las siguientes:

"Bueno, sencillamente, esto, a nuestro juicio, ha sido un *atropello* por parte del tribunal federal, específicamente del juez que ordenó el encarcelamiento del alcalde y a nuestro juicio es un *abuso de poder* de la jurisdicción federal; de lo que se trata es de un alcalde que tiene un caso muy meritorio que fue visto en un tribunal federal y que está en apelación en el Circuito de Boston —porque hay mérito en el caso. En el entretanto el juez desea y ordena al alcalde que pague alrededor de $200,000 a unos empleados que fueron cesanteados que ya el juez sí logr[ó] reponerlos . . . ." (Escolio omitido y énfasis suplido.) Resolución de 16 de noviembre de 1987, págs. 3–4.

implica el *establecimiento de una censura previa. Tampoco el que no reconozcamos la más amplia y dilatada libertad de defensa al abogado en el ejercicio de su profesión.* Incuestionablemente la crítica judicial sana y oportuna es un instrumento necesario y efectivo para mantener a los jueces alertos y atentos al estricto cumplimiento de sus funciones. *Tal crítica es un interés legítimo constitucional que debemos proteger.* Es un vehículo apropiado para producir cambios favorables en el sistema de administración de justicia. Nuestro deber es escuchar esa crítica sin infundada sensiblería". (Énfasis suplido y escolio omitido.)

## III

Aunque para algunos, por su rudeza, para algunos, las manifestaciones del licenciado Rivera Cruz sean susceptibles de estimarse como carentes de estilo forense y, por ende, poco ejemplarizantes —o como señala el propio Juez, Hon. José A. Fusté, "[m]entes razonables pueden interpretar las expresiones del Secretario como una violación a los cánones de ética profesional" (Resolución, *supra*, pág. 6)— ciertamente no rebasan el ámbito legítimo de su derecho de expresión —consustancial con la libertad de pensamiento— protegido por el Art. II, Sec. 4 de nuestra Constitución, L.P.R.A., Tomo 1, y la Primera Enmienda de la Constitución de Estados Unidos, L.P.R.A., Tomo 1.[2]

---

[2] Sobre los tres enfoques judiciales seguidos en las jurisdicciones estatales norteamericanas, consúltese a W.P. Hoye, *Silencing the Advocates or Policing the Profession? Ethical Limitations on the First Amendment Rights of Attorneys,* Drake L. R., Vol. 38, No. 1, 1988–1989, págs. 31–57.