per curiam:
A raíz de unas expresiones críticas vertidas públicamente por el Secretario de Justicia, Hon. Roberto Sánchez Ramos, en relación con la decisión de los tribunales de determinar no causa para arresto ante la denuncia presentada contra el ex Gobernador de Puerto Rico, Dr. Pedro Rosselló González, el Hon. Rolando Crespo Arroyo, Representante por Acumulación del Partido Nuevo Progresista, presentó una queja en su contra ante este Tribunal. Luego de haber examinado detenidamente el asunto, y a la luz de las circunstancias particulares de este caso, procede que declinemos el ejercicio de nuestra jurisdicción disciplinaria en atención a los criterios prudenciales establecidos en In re Secretario de Justicia, 118 D.P.R. 827 (1987) (In re Secretario de Justicia I).
I
Hace poco más de un año el Tribunal de Primera Instancia, Sala Municipal de San Juan, no encontró causa para ordenar el arresto del ex Gobernador de Puerto Rico, Dr. Pedro Rosselló González, según lo solicitó el Secretario de Justicia, Hon. Roberto Sánchez Ramos. A igual determinación llegó otra sala de dicho foro en una vista de determinación de causa probable en alzada.
Ante dicho resultado, el Secretario de Justicia manifestó públicamente su inconformidad y discrepancia con éste. A grandes rasgos, el Secretario de Justicia hizo las expresiones siguientes:
“Esto es un nuevo golpe a todos los que aspiramos a que el sistema de justicia trate por igual a todos. No me cabe duda que si hubiera sido un hijo de vecino sin conexiones y sin influencia en los medios, se hubiese determinado causa y el proceso hubiera terminado en una convicción; no me cabe la más mínima duda.
No podemos guiarnos por el poder, la influencia. Tenemos que tratar a todos por igual. Estamos convencidos que con esta misma relación de hechos, si la persona imputada hu *457 biera sido cualquiera en Puerto Rico que no tenga las mismas conexiones que este imputado, hubiéramos salido airosos”([1])
Motivado por dichas expresiones, el Representante por Acumulación del Partido Nuevo Progresista, Hon. Rolando Crespo Arroyo, presentó una queja disciplinaria ante nos mediante la cual le imputó al Secretario de Justicia haber violado el Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, que obliga a todo miembro de la profesión a observar una conducta respetuosa hacia los tribunales y a desalentar y evitar ataques injustificados contra los jueces o contra el buen orden en la administración de la justicia. Alegó, además, que el Secretario de Justicia actuó en contravención del Canon 38 (4 L.P.R.A. Ap. IX), el cual preceptúa el deber de todo abogado de esforzarse en la exaltación del honor y la dignidad de la profesión, y evitar hasta la apariencia de conducta impropia. En apoyo de lo anterior, el representante Crespo Arroyo sostuvo que las expresiones del Secretario de Justicia constituyeron “un ataque mendaz e injustificado a la profesión de la abogacía” y causaron “daño a la imagen de honestidad, laboriosidad y competencia [de la] Rama Judicial”. Querella por violación al Código de Ética Profesional, pág. 4.
El Represente Crespo Arroyo acompañó su queja con una grabación,([2]) copia de varios artículos de prensa escrita relacionados con el asunto, así como un documento titulado “Rolando Crespo presenta querella en contra del Secretario de Justicial:] Anuncia manifestaciones en rechazo a la gestión del funcionario”([3]) En este documento se anunció formalmente la presentación de la queja de epígrafe contra el *458 Secretario de Justicia y se convocó a varias manifestaciones y protestas para hacer público el rechazo a dicho funcionario.([4])
En vista de la queja presentada, le remitimos al Secretario de Justicia copia de ésta y le concedimos un término de diez días para presentar su contestación, conforme a la Regla 14(c) del Reglamento de este Tribunal, 4 L.RR.A. Ap. XXI-A. En respuesta, el Secretario de Justicia presentó una Moción de Desestimación en la que alegó que el procedimiento disciplinario en su contra es totalmente frívolo, pues —a su juicio— el representante Crespo Arroyo carece de legitimación activa para promoverlo. En apoyo de su alegación, adujo que el representante Crespo Arroyo no demostró satisfactoriamente un interés legítimo ético ni haber sufrido un peijuicio real directo por sus actuaciones, según lo requiere la norma establecida por este Tribunal en In re Secretario de Justicia, supra, y reafirmada en In re Secretario de Justicia, 126 D.P.R. 463 (1990) (In re Secretario de Justicia II). El Secretario de Justicia expuso que sus expresiones no le causaron perjuicio alguno al representante Crespo Arroyo y que éste lo que pretende vindicar es un daño abstracto, hipotético y generalizado.
En la alternativa, el Secretario de Justicia argüyó que sus expresiones están protegidas por el derecho a la libre expresión consagrado en la Primera Enmienda de la Constitución de Estados Unidos y en el Art. II, Sec. 4 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., *459 Tomo 1. En particular, adujo que sus expresiones constituyeron una opinión subjetiva, cuya falsedad no es susceptible de ser probada, según el estándar establecido en New York Times Co. v. Sullivan, 376 U.S. 254 (1964), y su progenie. Finalmente, alegó que, dada su función constitucional como representante de la Rama Ejecutiva, las expresiones en cuestión constituyeron una opinión sobre otra rama —la Rama Judicial— cumpliendo de esa forma con su “derecho y responsabilidad ... de exponer su criterio sobre asuntos gubernamentales ...”. (Énfasis suprimido.) Moción de desestimación, pág. 5. Se trató, a su juicio, de “una crítica que una Rama de gobierno lanza en cuanto al desempeño de otra[, lo que] es parte esencial del debate político entre Ramas de gobierno y del sistema de pesos y contrapesos establecido en nuestra Constitución”. Id.
El Representante Crespo Arroyo respondió a los planteamientos del Secretario de Justicia y, en su oposición a la solicitud de desestimación, alegó que posee legitimación activa para presentar la queja de epígrafe dado que, como funcionario de la Rama Legislativa, juró defender la Constitución, por lo que —a su juicio— “defender la integridad de la Rama Judicial” es su deber ineludible. Oposición a solicitud de desestimación, pág. 2. Además, señaló que In re Secretario de Justicia I, supra, es distinguible del caso de autos, mas no elaboró dicha alegación. Por último, reiteró que el Secretario de Justicia incurrió en conducta contraria al Canon 9 del Código de Ética Profesional, supra, y sostuvo que éste no podía invocar la Primera Enmienda o la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico como subterfugio para evadir su responsabilidad ética ya que, por ser un funcionario, sus expresiones no están protegidas constitucionalmente.
Por su parte, el Secretario de Justicia replicó a la oposición presentada por el representante Crespo Arroyo. Reiteró que la queja instada en su contra debe ser desestimada, pues la condición de legislador del representante *460 Crespo Arroyo no subsana su falta de legitimación activa. Insistió, además, en que sus expresiones están protegidas por su derecho constitucional a la libertad de expresión.
Para evaluar la queja de epígrafe, concedimos al representante Crespo Arroyo un término para que nos informara si la grabación y los recortes periodísticos que incluyó en su queja constituían toda la prueba respecto a los hechos que dieron lugar a la presente acción disciplinaria. Asimismo, le concedimos un término simultáneo al Secretario de Justicia para que nos informara si su réplica constituía su contestación a la queja y si daba por sometido el asunto.
En cumplimiento con lo anterior, el Secretario de Justicia compareció y nos informó que daba por sometidos para adjudicación los asuntos de derecho invocados en sus escritos. Sin embargo, expresó que —de denegar este Tribunal sus argumentos de derecho— no renunciaba a la celebración de un juicio plenario, mediante el cual se probaran en su contra los elementos fácticos de falsedad y conocimiento exigidos por New York Times Co. v. Sullivan, supra. Por su parte, el representante Crespo Arroyo compareció para informarnos que la base para establecer la responsabilidad ética del Secretario de Justicia son los referidos artículos periodísticos, la grabación y la posición de este último de no negar que realizó las expresiones en cuestión.
Examinado el expediente ante nuestra consideración, y por entender que no existe controversia esencial de hechos, procedemos a resolver sin trámite ulterior.
II
Como es sabido, el Departamento de Justicia de Puerto Rico es la agencia de la Rama Ejecutiva que ostenta la representación legal del Estado, tanto en las causas civiles como en las criminales. De ordinario, la representación legal del Estado la hace un abogado de dicha agencia de *461 acuerdo con el ordenamiento procesal y deontológico vigente, pero el Secretario de Justicia no interviene personalmente en la litigación activa ante los tribunales del país.
Ahora bien, el Secretario de Justicia es el funcionario de mayor rango en dicha institución, por lo que es el encargado de trazar las metas para hacer viable la consecución de la política pública establecida por la agencia. In re Secretario de Justicia I, supra, págs. 846-847. “Por las funciones impuestas por ley, es abogado. Sin embargo, no es un abogado más. Sus responsabilidades legales y administrativas son numerosas y versan sobre múltiples y sensitivos asuntos”, íd., pág. 846.
De hecho, en el pasado hemos reconocido que la complejidad del cargo de Secretario de Justicia y las funciones que éste realiza como integrante del Gabinete y segundo en sucesión al Gobernador, lo pueden llevar a involucrarse directa o indirectamente en asuntos públicos polarizados, impregnados o no de contenido político-partidista, que trascienden la visión tradicional del papel de principal abogadoasesor gubernamental. In re Secretario de Justicia I, supra, pág. 848. Es por eso que a veces resulta difícil separar el pronunciamiento del Secretario de Justicia como abogadoasesor de la Rama Ejecutiva, de aquel que emite como miembro del Gabinete, de una junta o como Gobernador interino. Id.
Evidentemente, la compleja gestión pública que desempeña el Secretario de Justicia lo coloca en una posición particular dentro de nuestro esquema de Gobierno. De hecho, se ha afirmado que la oficina del Secretario de Justicia “se encuentra muy involucrada con la mayoría de los oficiales del Gobierno. Es una oficina susceptible de asumir muchos roles conflictivos”. (Traducción nuestra.) W.N. Thompson y otros, Conflicts of Interest and the State Attorneys General, 15 Washburn L.J. 15, 30 (1976).
Precisamente, el carácter conflictivo del rol que ejerce el *462 Secretario de Justicia y la realidad de que, además de abogado, es funcionario de la Rama Ejecutiva, nos ha llevado a reconocer que en estas circunstancias el ejercicio de nuestra facultad disciplinaria “entraña necesariamente consideraciones constitucionales por tocar muy de cerca el delicado balance de poderes que garantiza nuestra Constitución”. In re Secretario de Justicia II, supra, pág. 467. A base de ese balance, que evoca aspectos básicos de la doctrina de separación de poderes, hemos afirmado que el poder compartido en nuestra democracia es una llamada al consenso y no una invitación a que una rama de gobierno le imponga a otra su criterio. íd., pág. 470. Del mismo modo, hemos señalado que la relación armoniosa que debe imperar entre las distintas ramas del gobierno supone, entre otras cosas, que “cuando haya conflicto sobre el alcance de los poderes constitucionales de cualquiera de ellas, los tribunales intervengan con prudencia y deferencia para aclarar los contornos de la Constitución y facilitar la resolución de las diferencias”. Silva v. Hernández Agosto, 118 D.P.R. 45, 57 (1986).
En consideración a la prudencia y mesura que deben imperar cuando una rama de gobierno interviene, de una forma u otra, con los poderes y prerrogativas de las otras, hemos desarrollado unos criterios de autolimitación para el ejercicio de nuestra jurisdicción general. Así, por ejemplo, hemos resuelto que un asunto no es susceptible de ser adjudicado judicialmente cuando éste presenta una cuestión política; o sea, cuando cae bajo el ámbito de acción de las ramas políticas del Gobierno o del electorado.([5])
*463 En el contexto disciplinario hemos hecho lo propio cuando se trata de circunstancias particulares en las que debemos ejercer especial cuidado y circunspección. Así, por ejemplo, en In re Rodríguez Torres, 106 D.P.R. 698 (1978), mediante resolución, dejamos sin efecto una regla de incompatibilidad que establecía un insalvable conflicto entre el ejercicio de la abogacía ante los tribunales de instancia y el pertenecer a una comisión del Senado que tuviera a su cargo la consideración de los nombramientos de jueces o fiscales, mientras durara la incumbencia del abogado-legislador en dicha comisión. Al así resolver, declinamos intervenir disciplinariamente con un abogado que, en su función como legislador, presidía la Comisión de Nombramientos del Senado. Como fundamento para ello, y en atención a los principios que subyacen la doctrina de separación de poderes, algunos miembros de este Tribunal sostuvieron que la deferencia debida a la Rama Legislativa requería nuestra abstención. Véase In re Rodríguez Torres, supra, págs. 724-725, opinión del Juez Presidente Señor Trías Monge, a la cual se unieron los Jueces Asociados Señores Dávila y Torres Rigual.
Igualmente, en In re Vélez Lugo, 162 D.P.R. 735 (2004), aun cuando se trataba de un abogado que no ostentaba un cargo público particular, autolimitamos el ejercicio de nuestra función disciplinaria por consideraciones prudenciales. En esa ocasión, dado que la queja presentada se basaba en ■una relación de negocios en el plano personal del querellado, y en vista de que la controversia ya había sido objeto de un proceso judicial, ordenamos el archivo del asunto, tomando en consideración que la conducta desplegada por el abogado tampoco lo hacía indigno de pertenecer al foro. Al resolver así, afirmamos que “la imposición de sanciones disciplinarias en [dicho] caso sacaría de proporción el poder inherente *464 de este Tribunal para reglamentar la profesión”. íd., págs. 742-743.
Por otro lado, en In re Secretario de Justicia I, supra, elaboramos específicamente unos criterios prudenciales de autolimitación para casos disciplinarios en los que esté involucrado un Secretario de Justicia. En particular, resolvimos que declinaremos ejercer nuestra jurisdicción disciplinaria en quejas contra un Secretario de Justicia cuando, de su faz: (1) el promovente no justifique satisfactoriamente un interés legítimo ético y un peijuicio real directo; (2) cuando el asunto, aunque de carácter ético, sea prematuro; (3) cuando los hechos no estén debidamente documentados o sustanciados, o (4) cuando no se trate de materia éticoadjudicable por corresponder al debate del Poder Legislativo o Ejecutivo, o pertenecer a la arena de la política partidista. In re Secretario de Justicia I, supra, pág. 850. Estos criterios de abstención fueron reafirmados por este Tribunal en In re Secretario de Justicia II, supra, pág. 468, donde —en efecto— declinamos ejercer nuestra jurisdicción disciplinaria en consideración a la función de Gobernador interino que estaba ejerciendo el Secretario de Justicia cuando incurrió en la conducta que motivó el inicio del proceso disciplinario.([6])
El primer criterio señalado, relativo a la demostración de un interés legítimo ético y de un peijuicio real directo de parte del promovente, responde esencialmente a las implicaciones del cargo de Secretario de Justicia y a la necesidad de que este Tribunal evite intervenir en asuntos matizados por intereses político-partidistas. Por un lado, dicho requisito toma en cuenta que la complejidad del rol que ejerce el Secretario de Justicia tiene el potencial de generar controversias delicadas en las que —para honrar los principios inmersos en la doctrina de separación de poderes— se requiere que la Rama Judicial intervenga con especial *465 cuidado. Por otro lado, éste parte del entendido de que se requiere una mayor cautela cuando atendemos quejas contra un abogado que, no sólo es miembro del foro, sino que es uno de los principales funcionarios de la Rama Ejecutiva, miembro del Gabinete y segundo en sucesión al Gobernador. Como tal, el Secretario de Justicia se coloca a menudo en medio de polémicas polarizadas capaces de generar en los ciudadanos reacciones encontradas. Su participación en tales asuntos, sin duda, le confiere un grado de vulnerabilidad superior al que pueden enfrentar otros abogados.
En la medida en que, por su propia naturaleza, el cargo de Secretario de Justicia obliga a este funcionario a asumir roles complejos y en ocasiones, controversiales y conflictivos, se requiere que el ciudadano que inicia un proceso disciplinario en su contra demuestre satisfactoriamente, de la faz de la queja presentada, un interés legítimo en el asunto disciplinario.
Debemos recordar que requerir un interés legítimo cuando de la ética se trata no es ajeno a nuestro ordenamiento ético-legal. Nótese que, por ejemplo, hemos resuelto que se debe examinar la existencia de legitimación activa en la persona que promueve la descalificación de un abogado. A tales efectos, hemos afirmado que la mera presentación de una moción de descalificación no conlleva automáticamente la descalificación del abogado en cuestión. Más bien, se debe evaluar, entre otras cosas, si la persona que solicita la descalificación tiene legitimación activa para invocarla. Otaño v. Vélez, 141 D.P.R. 820, 828 (1996); Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 864 (1995).
Si bien las mociones de descalificación no constituyen de por sí acciones disciplinarias, lo cierto es que su finalidad esencial se relaciona sustancialmente con el valor que se pretende vindicar mediante el proceso disciplinario. Por un lado, la moción de descalificación se emplea generalmente como medida preventiva para evitar posibles viola *466 dones a los cánones del Código de Ética Profesional. Meléndez v. Caribbean Int’l. News, 151 D.P.R. 649, 660 (2000); Liquilux Gas Corp. v. Berríos, Zaragoza, supra, pág. 864. Mientras, los procesos disciplinarios se realizan para pro-mover un desempeño profesional acorde con los más altos principios para beneficio, no sólo de la profesión misma, sino también de la ciudadanía y de las instituciones de justicia. In re Izquierdo Stella, 154 D.P.R. 732, 737 (2001). Por lo tanto, en ambos casos, particularmente cuando se recurre a la descalificación de un abogado para evitar violaciones éticas, lo que se busca preservar y restablecer —a fin de cuentas— es la ética misma de la profesión legal y, con ello, la integridad del sistema judicial.([7])
Conforme a lo anterior, no cabe duda que requerir la demostración de un interés legítimo en ciertas circunstancias, sobre todo cuando de la ética se trata, no es ajeno a nuestro sistema de derecho. A su vez, y a la luz del análisis esbozado, nos parece innegable que la aplicación de dicho requisito en las circunstancias de casos como el de autos resulta altamente necesaria. De esa forma nos aseguramos que funcionarios de la naturaleza del Secretario de Justicia sólo se vean sujetos al Inicio de un proceso disciplinario por razones meritorias y, sobre todo, que este Foro no sea utilizado para promover causas personales o políticas, no relacionadas necesariamente con el desempeño profesional de los abogados.
Ya anteriormente hemos expresado que este Tribunal no puede ser utilizado como “punta de lanza para saciar la sed de venganza que contra un miembro de la profesión pueda tener un ciudadano en particular”. In re Vélez Lugo, supra, págs. 739 — 740. Ala luz de dicha norma, hemos rechazado la posibilidad de convertir nuestra jurisdicción discipli *467 naria en un remedio judicial adicional o en un mecanismo alterno para aquellos quejosos insatisfechos que no han prevalecido en otros foros. In re Alverio Sánchez, 172 D.P.R. 181 (2007); In re Vélez Lugo, supra, pág. 742. Ello es así, pues el norte de todo procedimiento disciplinario es proteger al público y a la profesión legal, por lo que toda pretensión ajena a dicho propósito no será motivo para que este Foro emprenda la delicada encomienda de sancionar disciplinariamente a un abogado.
Aclarado lo anterior, debemos resolver —como cuestión de umbral— si en esta ocasión procede ejercer nuestra jurisdicción disciplinaria o si, por el contrario, igual que en otros casos similares al que nos ocupa, debemos declinar hacerlo. Para llegar a una conclusión a esos efectos, debemos determinar si el representante Crespo Arroyo cumplió con el requisito de demostrar satisfactoriamente, y de la faz de la queja presentada, un interés legítimo ético y un perjuicio real directo por las actuaciones del Secretario de Justicia.
III
Como mencionamos antes, el representante Crespo Arroyo presentó la queja que originó el caso de autos basándose en las expresiones vertidas por el Secretario de Justicia ante la prensa del País en torno al desenlace del proceso criminal seguido por el Estado contra el ex Gobernador Rosselló González. Este basó la queja en el interés general de defender la integridad de los tribunales y en su condición de legislador porque —como tal— juró defender la Constitución del Estado Libre Asociado de Puerto Rico. Dichos fundamentos, por sí solos, no cumplen con el estándar adoptado en In re Secretario de Justicia I, supra, el cual requiere la demostración concreta de un interés legítimo ético y un perjuicio real directo por las actuaciones del Secretario de Justicia.
*468 Si bien las expresiones del Secretario de Justicia pueden haber generado la indignación de funcionarios de la Rama Judicial y de ciudadanos como el representante Crespo Arroyo, y aun cuando se trata de expresiones que reflejan un modelo de conducta no ejemplarizante, lo cierto es que este último no demostró de la faz de la queja poseer interés particular alguno en el asunto de referencia ni un perjuicio concreto por las actuaciones del Secretario. Más allá del interés que puede compartir con el resto de la ciudadanía en el respeto hacia las instituciones de justicia, el representante Crespo Arroyo no pudo demostrar satisfactoriamente un interés individual de naturaleza ética que mueva a este Tribunal a ejercer su función disciplinaria. Este tampoco pudo probar un perjuicio claro y específico a raíz de las expresiones del Secretario de Justicia, aparte del daño general e indirecto que podemos alegar todos los funcionarios del tribunal.
La ausencia del requisito mencionado, sin duda alguna, supone una razón de peso para que declinemos ejercer nuestra jurisdicción disciplinaria. Lo contrario implicaría desatender injustificadamente las salvaguardas y los criterios elaborados por este Tribunal para la evaluación de quejas presentadas contra Secretarios de Justicia. Ello, evidentemente, con el consabido peligro de que se someta a estos funcionarios a un procedimiento disciplinario sin una demostración previa de un interés legítimo en el asunto y, sobre todo, que se mal utilice este Foro para dirimir controversias ajenas al objetivo principal de tales procedimientos.
IV
A modo de epílogo, debemos aclarar que el curso de acción que hoy tomamos ante las complejidades que presenta este caso no debe entenderse como una concesión de inmu *469 nidad a la figura del Secretario de Justicia, pues nuestra decisión no es impedimento para que ejerzamos nuestra jurisdicción disciplinaria cuando la conducta de dicho funcionario lo amerite y cuando se cumplan los requisitos necesarios para ello.
Por otro lado, en lo que concierne al trasfondo fáctico que suscitó la queja de epígrafe, debemos recordar que el respeto hacia los tribunales y la obligación de desalentar y evitar ataques injustificados contra los jueces no sólo están entre los pilares fundamentales sobre los que se erige nuestro código deontológico, sino que también sobré ellos descansa la buena marcha de los procedimientos judiciales y la confianza que el público deposita en ellos. Por lo tanto, le recordamos a todos los abogados, incluyendo al Hon. Roberto Sánchez Ramos, Secretario de Justicia, su deber —como celosos custodios de la imagen de la justicia— de observar una conducta que se caracterice por el mayor respeto hacia los tribunales. Asimismo, le exhortamos a propiciar debates jurídicos de la altura moral e intelectual que se espera de todo abogado, en los que la moderación y la prudencia son la mejor herramienta para evitar ataques injustificados que en el fragor del momento puedan ser dirigidos irreflexivamente al sistema judicial.
V
Por los fundamentos antes expuestos, se deniega el ejercicio de nuestra jurisdicción disciplinaria y se ordena el archivo de la queja presentada contra el Secretario de Justicia, Hon. Roberto Sánchez Ramos.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente. El Juez Asociado Señor Rivera Pérez se inhibió.

(1) Aunque dichas expresiones fueron difundidas por diversos medios de prensa, las extraemos de los documentos incluidos con la queja presentada, en particular, de un artículo publicado por el periódico El Vocero de Puerto Rico el 23 de febrero de 2007. No existe controversia sobre el contenido de las mencionadas expresiones.

(2) Esta contiene dos entrevistas televisivas concedidas por el secretario Sánchez Ramos ante medios noticiosos locales, en las que —en esencia— emitió expresiones similares a las citadas anteriormente.

(3) Dicho documento, que parece ser un comunicado de prensa, está suscrito bajo el nombre y cargo del legislador, según se desprende de su encabezamiento.

(4) Además, en dicho documento se hizo constar, entre otras cosas, lo siguiente:
“ ‘El Secretario de Justicia no solamente persiguió políticamente al Presidente del Partido Nuevo Progresista!,] sino que les faltó el respeto a la judicatura y a todos los puertorriqueños, cuando al perder ante una juez decidió, sin medir las consecuencias y sin considerar el cargo que ocupa, arremetió [sic] contra el sistema. ...’

“Manifestaciones

“Rolando Crespo indicó que el Secretario de Justicia ha mantenido una conducta acomodaticia a favor del Partido Popular Democrático, protegiendo y dejándo [sic] a un lado los referidos contra figuras identificadas con su partido.
“ ‘Cuando se pueda objetivamente ver las actuaciones del Secretario, encontraremos y podremos darnos cuenta con mayor claridad de como [sic] Sánchez Ramos, [sic] se ha sentado encima de los referidos contra la administración de Sila Calderón y del Alcalde de Carolina, a quien [sic] no ha querido tocar por razones obvias’.”

(5) La referida doctrina —cuya aplicación impide la intervención judicial— tiene tres vertientes: (1) cuando el asunto ha sido asignado textualmente por la Constitución a otra rama del gobierno; (2) cuando no existen criterios de decisión susceptibles de descubrirse y administrarse por los tribunales, y (3) cuando existen consideraciones derivadas de la prudencia. Se trata de una autorrestricción inherente a nuestro esquema republicano de gobierno. Córdovay otros v. Cámara Representantes, 171 D.P.R. 789 (2007); Noriega v. Hernández Colón, 135 D.P.R. 406, 422 (1994); Silva v. Hernández Agosto, 118 D.P.R. 45, 53-55 (1986).
Asimismo, hemos establecido que un caso no es justiciable cuando una de las partes no tiene legitimación activa para promoverlo, cuando luego de comenzado el *463 pleito éste se torna académico, cuando se promueve un pleito que no está maduro o cuando las partes persiguen obtener una opinión consultiva. Córdova y otros v. Cámara Representantes, supra; Noriega v. Hernández Colón, supra, págs. 421-422.

(6) Igual curso de acción seguimos poco después en In re Rivera Cruz, 126 D.P.R. 768 (1990), donde, mediante resolución, declinamos ejercer nuestra jurisdicción disciplinaria en otro asunto relacionado con un Secretario de Justicia.

(7) Otros tribunales también requieren que el promovente de una descalificación posea legitimación activa. Véanse, a modo ilustrativo: Colyer v. Smith, 50 F. Supp.2d 966 (C.D. Cal. 1999); Shire Laboratories v. Nostrum Pharmaceuticals, 2006 U.S. Dist. LEXIS 51043 (2006); Xcentric Ventures, LLC v. Stanley, 2007 U.S. Dist. LEXIS 55459 (2007).