*In re* Queja contra el Lic. Héctor Rivera Cruz.

*Número:* AB-89-22          *Resuelto:* 29 de junio de 1990

## RESOLUCIÓN

Examinada la resolución emitida el 5 de marzo de 1986 por el Hon. Guillermo Arbona Lago, Juez Superior, así como su comunicación de 6 de julio de 1989 y la comunicación de 29 de Junio de 1989 del Hon. Héctor Rivera Cruz, Secretario de Justicia, no ha lugar al ejercicio de nuestra jurisdicción disciplinaria.

Lo acordó el Tribunal y certifica el señor Secretario General Interino. El Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón se inhibieron. El Juez Asociado Señor Rebollo López emitió una opinión disidente.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

¿Puede un abogado en nuestra jurisdicción *comunicarse ex parte* con un magistrado que está presidiendo un litigio, en el cual dicho abogado participa como tal, con el propósito de *privada-*

*mente comunicarle* que tiene en su poder información que *alegadamente obliga* a dicho juez a inhibirse en el caso *y advertirle* que, de así no inhibirse, procederá a radicar formal y públicamente una moción demandando su inhibición? *Contrario a la actuación, y creencias, a esos efectos del Hon. Secretario de Justicia de Puerto Rico, Lcdo. Héctor Rivera Cruz —posición que, en cierto modo, refrenda el "no ha lugar" que provee una mayoría del Tribunal en el día de hoy— contestamos dicha interrogante en la negativa.*

Somos del criterio que una actuación de esa naturaleza —en adición a ser contraria a las expresas disposiciones de la Regla 63 de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III)— *viola, cuando menos, el propósito de los Cánones 9, 11 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, que rige el ejercicio de la abogacía en Puerto Rico y denota una ausencia de buen juicio por parte de dicho abogado.*

I

La situación ante nuestra consideración tiene su génesis en *una resolución* que emitiera *el 5 de mayo de 1986* el Hon. Guillermo Arbona Lago, Juez del Tribunal Superior asignado al Centro Judicial de San Juan, en relación con un caso entonces pendiente en la Sala que él preside, *Pueblo International v. Héctor Rivera Cruz, Secretario de Justicia de Puerto Rico y otros*, Civil Núm. 80-6454. En la mencionada resolución se hace referencia a una solicitud de inhibición que contra dicho magistrado radicara en el caso el Departamento de Justicia y a unas actuaciones y gestiones, previas a la radicación de la moción de inhibición, que por encomienda e instrucciones del Secretario Rivera Cruz realizaron abogados del Departamento de Justicia con el objetivo de que dicho magistrado "voluntariamente" se inhibiera de participar en el mencionado caso. La referida actuación fue catalogada por el Juez Arbona Lago, en la resolución que emitiera, como "*una impermisible amenaza de naturaleza chantajista* que bajo ningún concepto el juez suscribiente puede tan

siquiera considerar y por tanto, fue rechazada con indignación y la más profunda convicción, *en el mismo momento y por el mismo conducto* en que recibimos tan *impropia y tendenciosa invitación*". (Énfasis suplido.) Resolución, pág. 3.

Un examen de la moción de inhibición que radicara el Departamento de Justicia revela que fueron tres las razones que indujeron al Secretario Rivera Cruz a pensar que existía base legal suficiente para solicitar la inhibición del Juez Arbona Lago. La primera de ellas se refiere al hecho de que la señora esposa del mencionado magistrado, Lcda. Diana Azizi, era para esa época la "asesora legal" de las Farmacias El Amal, establecimiento que, a pesar de *no* ser parte en el pleito sobre la controversial Ley de Cierre, podían verse afectados —como miles de otros— por la decisión que se emitiera en dicho caso. En específico, sostuvo el Departamento de Justicia que en una visita que hiciera la licenciada Azizi de Arbona al mencionado Departamento en busca de orientación sobre la Ley de Cierre, ésta alegadamente hizo una manifestación "en el sentido de que creía que [su esposo] aún tenía jurisdicción sobre este pleito . . .".[1]

Como segundo fundamento, adujo el Departamento de Justicia que un hermano del magistrado en controversia, de nombre Joaquín Arbona Lago, era objeto para esa fecha de una investigación por parte del referido Departamento en relación con unas alegadas irregularidades cometidas en las ventas, por subastas, de determinados alimentos al Departamento de Instrucción Pública de Puerto Rico, la cual podía desembocar en la radicación de cargos criminales contra dicho ciudadano.

Por último, alegó el Departamento de Justicia como fundamento para solicitar la inhibición del Juez Arbona Lago el supuesto hecho de que éste, en la consideración y resolución de un incidente anterior ocurrido en dicho pleito, había erróneamente "adoptado o hecho suyas" unas alegaciones de la parte demandante que no se ajustaban a la verdad, lo cual había ocasionado

---

[1] Véase la declaración jurada prestada por el Lcdo. Federico Cedó Alzamora, Secretario Auxiliar del Departamento de Justicia de Puerto Rico, pág. 1.

que este Tribunal hiciera unas expresiones imputándole al Departamento de Justicia haber actuado de "mala fe y con falta de manos limpias".(2)

Lo anteriormente señalado, repetimos, a juicio del Secretario Rivera Cruz constituía base legal suficiente para solicitar la inhibición del Juez Arbona Lago. En lugar de impartir instrucciones a sus subalternos en el Departamento de Justicia para que se radicara, formal y públicamente, una moción de inhibición ante el tribunal de instancia, el Secretario Rivera Cruz instruyó al Lcdo. Felipe Algarín, Secretario Auxiliar a cargo de la División de Litigios del Departamento de Justicia, para que le llevara —*en palabras del Juez Arbona Lago*— "un mensaje" a dicho magistrado a los efectos de que si éste no se inhibía "voluntariamente" en el caso, el Departamento radicaría una moción en solicitud de su inhibición. La persona que utilizó el licenciado Algarín para transmitir al Juez Arbona Lago el "mensaje" del Secretario Rivera Cruz lo fue el entonces Juez Administrador del Centro Judicial de San Juan, Hon. Carlos E. Polo.

La gestión encomendada al Juez Polo por el Secretario de Justicia —por conducto del licenciado Algarín— tuvo la fuerte y enérgica reacción antes mencionada por parte del Juez Arbona Lago. En la Resolución de 5 de mayo de 1986, el Juez Arbona Lago refirió para la atención de otro magistrado la moción de inhibición que le radicara el Estado.(3) En adición, instruyó a la Secretaría del Tribunal Superior de San Juan para que elevara a este Tribunal copia de su resolución.

Una mayoría de los integrantes de este Tribunal, por considerar que la situación "no estaba madura", se negó entonces a

---

(2)   Dicho fundamento obviamente se refiere a unas opiniones concurrentes y disidentes emitidas por varios de los integrantes del Tribunal con fecha de 25 de abril de 1986, la mayoría de las cuales contienen *unas merecidas y severas críticas* a la forma y manera en que el Departamento de Justicia de Puerto Rico, y el Secretario del mismo, habían actuado en el referido caso de la Ley de Cierre. Véase: *Pueblo Int'l. Inc. v. Srio. de Justicia*, 117 D.P.R. 230 (1986).

(3)   La moción de inhibición fue declarada *sin lugar* por el Hon. Juez Superior Abner Limardo mediante una bien fundamentada resolución de fecha 7 de mayo de 1986. La misma *no* fue objeto de recurso alguno ante este Tribunal por parte del Estado.

tomar acción alguna respecto a la mencionada resolución emitida por el Juez Arbona Lago. *Disentimos en aquella ocasión.* En el "voto particular individual" que a esos efectos emitiéramos con fecha de 9 de mayo de 1986 expresamos, en lo pertinente, que:

Somos del criterio que el asunto planteado por la referida resolución *amerita la más pronta y enérgica actuación por parte de este Tribunal en el ámbito de su jurisdicción disciplinaria como consecuencia de su poder inherente de reglamentar la profesión de abogado.* La investigación a ser realizada esclarecería la situación, *poniéndole coto a una situación que no beneficia a nadie,* fijando responsabilidades, *si es que las mismas son procedentes,* sobre aquellos funcionarios del Departamento de Justicia de Puerto Rico y los miembros de la [J]udicatura que tuvieron participación en los incidentes a que hace referencia la resolución emitida.

La resolución en controversia fue emitida por un juez del Tribunal Superior de Puerto Rico, la misma va dirigida al Señor Secretario de Justicia de Puerto Rico, y contiene *graves y serias imputaciones* que dependiendo del resultado final pueden constituir violaciones a los Cánones de Ética Profesional o a los Cánones de Ética Judicial. *Permitir que el asunto planteado permanezca en el "limbo jurídico" por un tiempo indefinido le hace un grave daño al sistema de justicia en Puerto Rico.* (Énfasis suplido y en el original, y escolios omitidos.) *Pueblo Int'l Inc. v. Srio. de Justicia,* 117 D.P.R. 362, 364 (1986).

En la reunión del Pleno del Tribunal correspondiente al *15 de junio de 1989* se acordó solicitar del Secretario Rivera Cruz los "comentarios que a bien tuviera hacer" respecto a la resolución que emitiera el Juez Arbona Lago *el 5 de mayo de 1986.* A esos efectos, el entonces Secretario General Interino del Tribunal, Sr. Heriberto Pérez Ruiz, le envió una carta de 19 de junio de 1989 al Secretario Rivera Cruz concediéndole un término dentro del cual éste debía comparecer "con sus comentarios y reacciones en torno a la" resolución emitida por el Juez Arbona Lago.

En cumplimiento de dicha solicitud, el Secretario Rivera Cruz compareció mediante comunicación escrita de fecha 29 de junio de 1989. En la misma, en lo pertinente, expresó:

. . . [D]eseo hacer los siguientes comentarios sobre lo ocurrido. Durante la litigación del caso *Pueblo International, Inc.* vs. *Héctor*

*Rivera Cruz*, Civil Núm. 80-6454, ante el Juez Superior Arbona Lago, se trajo a mi atención unos hechos por abogados del Departamento relacionados con la posible recusación del Juez Arbona Lago. *Luego de una evaluación conjunta de los hechos, entendimos que el deber del Departamento de Justicia era solicitar la recusación del Juez Arbona Lago.* Razonablemente concluimos de buena fe que la situación ameritaba ser llevada *ante la atención de un Tribunal.*

*Es conocido en el foro y nuestra experiencia lo confirma, que es una práctica utilizada con frecuencia en los tribunales del país que un abogado que tiene la intención de solicitar la recusación de un Juez le informe primero verbalmente e informalmente al Juez de su intención y de los fundamentos para su proceder.* El propósito de este *procedimiento informal* es darle la oportunidad al Magistrado de *inhibirse voluntariamente* si entiende que las razones que se aducen para su inhibición son válidas y le impiden desempeñarse como Juez en el procedimiento. De esta forma el Juez se inhibe sin que sea necesario radicar un procedimiento formal. *Con el propósito antes indicado, se le comunicó al Juez Carlos E. Polo, entonces Juez Administrador de lo Civil, para que éste le informara al Juez Arbona Lago, los hechos, que a nuestro juicio, justificaban la inhibición;* hechos que posteriormente se expusieron bajo juramento en la moción de recusación.

En ningún momento tuvo este Secretario o ningún abogado del Departamento de Justicia la intención de amenazar al Juez Arbona Lago o atacar su integridad. *Simplemente, el Departamento estaba utilizando un procedimiento informal que entendemos forma parte integral de nuestras costumbres procesales judiciales y que está basado en consideraciones de cortesía hacia el Magistrado.* La reacción del Juez Arbona Lago tiene que haber sido producto de un mal entendido. (Énfasis suplido.) Carta de 29 de junio de 1989, págs. 2–3.

Recibida la comunicación del Secretario Rivera Cruz, el Tribunal solicitó del Juez Arbona Lago —igualmente por conducto del señor Pérez Ruiz— los comentarios que éste tuviera a bien hacer respecto a lo expresado por el referido funcionario. El Juez Arbona Lago, mediante comunicación de fecha 6 de julio de 1989, expresó, en lo pertinente, "que nada ten[ía] que añadir" a la resolución que emitiera el día 5 de mayo de 1986.

En el día de hoy el Tribunal —mediante una escueta resolución, producto la misma de un acuerdo mayoritario— ha decidido proveer "no ha lugar al ejercicio de [su] jurisdicción disciplinaria". *Lamentamos tener que diferir nuevamente de una actuación mayoritaria en el presente asunto.*

## II

La ausencia de imparcialidad por parte del juez que preside un procedimiento judicial constituye una *negación absoluta* del debido procedimiento de ley. Esa, naturalmente, es la razón de la existencia de la Regla 63.1 de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), la cual establece que:

A iniciativa propia, o a recusación de parte, un juez deberá inhibirse de actuar en un pleito o procedimiento en cualquiera de los casos siguientes:

(a) Por estar interesado en su resultado o tener prejuicio o parcialidad personal hacia cualquiera de las partes o sus abogados.

(b) Por existir parentesco de consanguinidad o afinidad con cualquiera de las partes o de sus abogados dentro del cuarto grado.

(c) Por haber sido abogado o consejero de cualquiera de las partes o sus abogados en el pleito pendiente ante él, o fiscal en una investigación o proceso criminal donde los hechos fueren los mismos que habrían de ser sometidos a su resolución.

(d) Por existir una relación de amistad de tal naturaleza entre el juez y cualquiera de las partes o sus abogados que pueda frustrar los fines de la justicia.

(e) Por cualquier otra causa *que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.* (Énfasis suplido.)

Advertido un abogado que participa como tal en un litigio pendiente de resolución ante uno de nuestros tribunales de justicia de la existencia de una causa o razón que incapacita al magistrado que preside el mismo para seguir actuando en el caso, *dicho abogado viene en la obligación ética de inmediatamente plantear dicha situación ante el tribunal mediante la presentación de una moción de inhibición o recusación.*

La *obligación ética* a esos efectos surge de las disposiciones, *entre otros*, de los *Cánones 9 y 38 del Código de Ética Profesional*, 4 L.P.R.A. Ap. IX, los cuales, en términos generales, le imponen al abogado la obligación de ser un *celoso guardián* de la buena imagen y calidad de la justicia que se dispensa en nuestra jurisdicción.(4) El requisito de *plantear el asunto inmediatamente mediante la presentación de una moción de inhibición ante el tribunal* emana de las disposiciones de la *Regla 63.2* de Procedimiento Civil de 1979, *supra*, la cual, en lo pertinente, dispone que la moción de "recusación *deberá* ser presentada *tan pronto* el solicitante advenga en conocimiento de la causa de recusación". (Énfasis suplido.) Como es sabido, el término "deberá" es uno "imperativo o mandatorio" que impone un "deber ministerial". R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e*

---

(4) Dispone el citado Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX:
"*Canon 9. Conducta del abogado ante los tribunales*

"*El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto.* Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

"*El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.*" (Énfasis suplido.)

Por su parte, establece el referido Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, en lo pertinente, que:
"*Canon 38. Preservación del honor y dignidad de la profesión*

"El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. *Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión, tales como: denunciar valientemente, ante el foro correspondiente, todo tipo de conducta corrupta y deshonrosa de cualquier colega o funcionario judicial*; aceptar sin vacilaciones cualquier reclamación contra un compañero de profesión que haya perjudicado los intereses de un cliente; poner en conocimiento de las autoridades apropiadas todo acto delictivo o de perjurio que ante él se cometiera; velar y luchar contra la admisión al ejercicio de la profesión de personas que no reúnan las condiciones morales y éticas, así como de preparación académica, que nuestra profesión presupone. Todo abogado debe estar convencido de las condiciones idóneas, morales y éticas de un aspirante al ejercicio de la profesión antes de recomendarle para su admisión al foro. . . ." (Énfasis suplido.)

*interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Cap. 36, pág. 267; *Srio. de Justicia v. Tribunal Superior*, 95 D.P.R. 158, 161–163 (1967).

El Secretario Rivera Cruz, en su comparecencia ante este Tribunal, realmente no niega que lo anteriormente expresado sea correcto; *inclusive se puede decir que lo acepta*. Como pudimos notar, en la referida comparecencia dicho funcionario expresa que, luego de "una evaluación conjunta de los hechos", él entendió que "el deber del Departamento de Justicia era solicitar la recusación del Juez Arbona Lago", llevando el asunto ante la atención de un Tribunal . . .". Carta de 29 de junio de 1989, *supra*.

Aduce en su defensa, sin embargo, el Secretario Rivera Cruz que ello así no se hizo desde el primer momento en el presente caso en vista de una alegada *"práctica* utilizada con frecuencia en los tribunales del país que un abogado que tiene la intención de solicitar la recusación de un Juez *le informe primero verbalmente e informalmente* al Juez de su intención y de los fundamentos para su proceder", la cual práctica, según el Secretario Rivera Cruz, no sólo es "conocid[a] en el foro" puertorriqueño, sino que su "experiencia [como abogado] l[a] confirma . . .". (Énfasis suplido.) Carta de 29 de junio de 1989, *supra*.

Realmente sorprende el hecho de que el Secretario de Justicia de Puerto Rico —quien es el abogado que representa al Estado ante los tribunales de justicia en nuestra jurisdicción, quien tiene bajo sus órdenes y controla un número considerable de abogados, y quien en tal capacidad debe de ser un ejemplo para otros— asuma y endose esa posición.

En primer término, y aun cuando reconocemos que es factible que la conducta que refrenda sin reservas de clase alguna el Secretario Rivera Cruz haya ocurrido en una que otra ocasión, tenemos serias dudas sobre el hecho de que ésta sea una práctica generalizada a nivel de instancia. No consideramos posible que los jueces de instancia hayan pacientemente soportado dicha práctica —la cual resulta ser no sólo peligrosa, sino que ofensiva a su condición de funcionario íntegro, honesto e imparcial— por tanto tiempo sin tomar las medidas pertinentes a su alcance para

ponerle fin a la misma. Nos resistimos a así aceptarlo; nuestra experiencia ciertamente así no lo indica.

En segundo lugar, y aun aceptando —a los fines de la argumentación— que efectivamente ello constituye una práctica generalizada a nivel de instancia, *la misma es una contraria y nociva a la mejor administración de la justicia.* Dicha práctica resulta ser *incompatible* con las disposiciones del Canon 11 del Código de Ética Profesional, *supra*, el cual dispone:

*Canon 11. Indebidas atenciones e influencias hacia los jueces*

Las marcadas atenciones y la hospitalidad inusitada por parte de un abogado hacia un juez traen consigo equívocas interpretaciones sobre los motivos tanto del juez como del abogado y deben evitarse. *Un abogado no debe comunicarse ni discutir con el juez en ausencia de la otra parte sobre los méritos de un caso pendiente,* y merece ser reprendido por cualquier acción encaminada a obtener especial consideración personal de un juez. Sumo cuidado debe tener el abogado que ocupa un cargo público o político en abstenerse de tratar de ejercer influencia o presión indebida en la tramitación de cualquier asunto sometido a la consideración judicial." (Énfasis suplido.)

Como podemos notar, el Canon 11 citado *prohíbe la comunicación ex parte* entre el abogado y el juez *sobre·los méritos* del caso. Aun cuando una conversación sobre el tema en controversia —solicitud "informal" de inhibición del juez— no cualifica estrictamente como una "sobre los méritos del caso", *nos parece obvio que el propósito que persigue el citado Canon 11 lo es el de evitar toda clase de comunicación, o conversación, ex parte entre el abogado y el juez sobre aspectos que puedan afectar fundamentalmente el resultado del caso.* No creemos que alguien pueda, con seriedad jurídica, sostener que el aspecto de la inhibición del juez que preside los procedimientos en un caso es algo que no tiene profundos efectos y consecuencias sobre *el resultado final* del mismo, por lo que dicho aspecto resulta ser igual o más importante que una conversación sobre los méritos del caso. De manera, pues, que —aun cuando la práctica en controversia pueda ser una generalizada en nuestra jurisdicción— *dicha práctica es una prohibida por las disposiciones del antes citado Canon 11 del*

*Código de Ética Profesional que este Tribunal debería de prohibir de inmediato.*

¿Cesa dicha prohibición si, en lugar del abogado sostener la conversación con el juez sobre su posible inhibición en forma *ex parte*, éste acude a la oficina del juez en compañía de la representación legal de la otra parte? *Contestamos, igualmente, en la negativa.* Ello así por cuanto las disposiciones de la antes citada Regla 63.2 de Procedimiento Civil son claras, específicas y mandatorias. Las mismas, como hemos visto, le imponen *el deber ineludible al abogado de acudir al tribunal, mediante moción a esos efectos, con el propósito de públicamente plantear el asunto* "tan pronto [como] advenga en conocimiento de la causa de recusación" (Regla 63.2, *supra*) y no mediante una audiencia privada e informal con el magistrado. Como expresara este Tribunal en *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495, 506 (1978), "las alegaciones se prueban y demuestran a través de los trámites y medios evidenciarios establecidos en ley".[5]

La inhibición de un juez en un caso en particular *no* es asunto para ser discutido tras puertas cerradas. No debe perderse de vista que cuando un abogado entiende que existe "causa suficiente" para solicitar la recusación o inhibición de un juez, y solicita la misma, no sólo cuestiona la imparcialidad de éste para poder actuar objetivamente en el mismo sino que, *en cierta forma y en determinadas situaciones*, pone en tela de juicio la integridad profesional y personal del juez.

Ello es la razón por la cual la citada Regla 63.2 de Procedimiento Civil exige *que la moción de inhibición sea jurada.* De esta forma se intenta evitar —en protección de la imagen e integridad de los jueces— que personas inescrupulosas soliciten la recusación de un magistrado mediante la utilización de razones frívolas e infundadas. Tratándose de una moción jurada que se radica formalmente ante el tribunal, éste queda facultado para, en

---

(5) Véase, en general, las disposiciones de la Regla 8 de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

situaciones en que así suceda, fijar responsabilidades en salvaguarda de su dignidad.(6)

Permitir que las alegadas "razones" de inhibición se discutan verbalmente en la oficina privada de los jueces, donde no existe récord, promueve y se presta para que se "amedrente" y se hiera la dignidad de éstos con frívolas e infundadas razones sin que proceda la imposición de sanciones a quien así actúe. Ello no es conducente a una sana administración de la justicia en nuestra jurisdicción.

Conviene recordar las certeras expresiones de este Tribunal en *In re Criado Vázquez*, 108 D.P.R. 642, 643 (1979), a los efectos de que:

> El abogado, en el descargo de su responsabilidad como representante de su cliente, debe actuar sin temor cuando tiene motivos fundados para solicitar la inhibición de un juez. Debe, sin embargo, ser cauteloso, sobre todo cuando el motivo de inhibición que invoca acusa conducta del juez reñida con la ética judicial. Y mientras más grave sea la imputación, mayor debe ser su ponderación de las bases de la misma.
>
> La fe en la justicia se nutre y se fortalece con el concepto de la alta moralidad que se tenga de quienes la imparten. En el descargo de su obligación como servidores de la justicia los abogados deben ser celosos guardianes del prestigio de quienes tienen esa difícil y noble misión. Jamás deben hacerse eco de información que puedan desmerecerles a menos que estén en condiciones de substanciarla cumplidamente. *Deben recordar que la calumnia respecto a los hombres de honor, siempre deja su huella de infamia.* (Énfasis suplido.)

### III

El caso específico ante nuestra consideración es uno aún más grave y serio. El abogado que pretendió lograr la inhibición —*de manera impropia mediante un "mensaje" verbal a esos efectos*—

---

(6) A esos efectos, debe recordarse que el citado Canon 9 del Código de Ética Profesional le impone al abogado la obligación de observar para con los tribunales "una conducta que se caracterice por el mayor respeto".

del Juez Arbona Lago *no es un abogado común y corriente.* Se trata del Secretario de Justicia de Puerto Rico, funcionario que no sólo ha asesorado tradicionalmente al Gobernador de Puerto Rico sobre nombramientos, y renominaciones, judiciales sino que es el funcionario de la Rama Ejecutiva de nuestro Gobierno encargado de la investigación y procesamiento de los casos criminales ante nuestros tribunales de instancia.

Cuando consideramos que una de las alegadas causas para solicitar —de manera verbal, *ex parte*, y por "mensajero"— la inhibición del Juez Arbona Lago lo fue el hecho de que un hermano del referido magistrado había sido, y estaba siendo en esos momentos, objeto de una investigación que podía desembocar en la radicación de cargos criminales, *realmente no puede sorprender a nadie* la reacción de indignación del Juez Arbona Lago al ser objeto de dicho "mensaje" y la calificación que éste hizo de dicha acción —al igual que cualquier persona en las mismas circunstancias razonablemente hubiera hecho— como "una impermisible amenaza de naturaleza chantajista . . .". Resolución, *supra.*

Lo que *verdaderamente resulta sorprendente e impermisible* lo es que fuera el Secretario de Justicia quien originara tal acción y que dicho funcionario, en esta etapa de los procedimientos, todavía esté sosteniendo y defendiendo la procedencia jurídica y propiedad de su actuación. El Secretario de Justicia de Puerto Rico, como principal abogado del Gobierno, debe mantener bien presente lo establecido por el transcrito Canon 11 del Código de Ética Profesional a los efectos de que "[s]umo cuidado debe tener el abogado que ocupa un cargo público o político en abstenerse de tratar de ejercer influencia o presión indebida en la tramitación de cualquier asunto sometido a la consideración judicial". Por otro lado, no deja igualmente de sorprender la inacción de este Tribunal al no haber actuado sobre este asunto durante cuatro largos años y la lamentable acción que mayoritariamente toma este Foro en el día de hoy, luego de transcurrido dicho término, de proveer un escueto no ha lugar al ejercicio de su jurisdicción disciplinaria.

En resumen, disentimos de la actuación de la mayoría del Tribunal por razón de que somos del criterio que este Tribunal debió asumir jurisdicción disciplinaria en el presente asunto, prohibir la práctica en controversia y, como sanción disciplinaria, amonestar y reprender al Secretario Rivera Cruz por su acción de solicitar, de manera impropia, la inhibición del Juez Arbona Lago.