EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Juan R. Marchand Quintero | Queja 2000 TSPR 134 |
|---|---|

Número del Caso: AB-2000-0014 y AB-2000-0021

Fecha: 14/09/2000

Oficina del Procurador General:

Hon. Gustavo A. Gelpí
Procurador General

Abogado de la Parte Querellada:

Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Juan R. Marchand Quintero

AB-2000-21

AB-2000-14

PER CURIAM

San Juan, Puerto Rico a        14 de se ptiembre      de
2000

> *La buena marcha del proceso judicial del país*
> *es responsabilidad ineludible de todo miembro*
> *de la profesión legal. Cánones de Ética*
> *Profesional, 4 L.P.R.A. Ap. IX Parte II*
> *Criterio General.*

Formatted: Spanish (International Sort)

Los incidentes que motivaron la queja de epígrafe ya han sidofueron examinados por este Tribunal en el caso de Mélendez Vega v. Caribbean International News y otros, res. el 29 de junio de 2000, 2000 TSPR _____, 2000 JTS ___108. En aquella ocasión sostuvimos la corrección de la descalificación del Licenciado. Juan R. Marchand Quintero dictada por el Juez de Primera Instancia Hon. Víctor Rivera González              en              el              trámite

del caso Núm. KDP 92-0574.  La orden de descalificación se fundó en una comunicación telefónica ex parte mediante la cual el letrado participó al Juez la existencia de una investigación periodística sobre sus ejecutorias anteriores como juez de lo criminal.  Dicho acercamiento se hizo alegadamente con el propósito de prevenir al Juez de que EL Vocero solicitaría su recusación fundado en la probabilidad de publicación de artículos como resultado de la investigación.

En esta ocasión, nos toca examinar los mismos hechos que provocaron la descalificación bajo la lupa de nuestra facultad disciplinaria.  La controversia ante nos se reduce, pues, a determinar si la comunicación del letrado fue una cortesía profesional o si, por el contrario, representa un acercamiento indebido contrario a los postulados de ética profesional.  Se impone una breve recapitulación del contexto en el cual se produce la llamada y del contenido de la misma.

I

En junio de 1992, la Fiscal Iris Meléndez Vega presentó una acción de daños y perjuicios por libelo y difamación contra Caribbean International News Corp. (corporación que publica el diario El Vocero), Gaspar Roca, José A. Purcell, Martha Marrero y Héctor Santiago

Rivera (en adelante El Vocero), Civil Núm. KDP-92-0574. Ello por la publicación de una serie de

I

Para el mes de junio de 1992, la Fiscal Iris Meléndez Vega presentó acción de daños y perjuicios por libelo y difamación contra Caribbean International News Corp. (corporación que publica el diario El Vocero), Gaspar Roca, José A. Purcell, Martha Marrero y Héctor Santiago Rivera (en adelante El Vocero), Civil Núm. KDP-92-0574. Ello por la publicación de una serie de artículos en el diario, los cuales imputaban a la Fiscal Meléndez una alegada conducta constitutiva de hostigamiento sexual a una subalterna del mismo sexo. Desde los inicios del pleito, el licenciado Marchand Quintero ha sido uno de los dos abogados que comparecen en representación de El Vocero.

En los ocho (8) años que ha estado pendiente de resolución el litigio, diversos incidentes interlocutorios han sido objeto de recursos ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) y ante este Tribunal. Tanto a nivel de instancia como a nivel apelativo, el caso fue reasignado en numerosas ocasiones. **La mayoría de las reasignaciones respondieron a inhibiciones voluntarias o**

**solicitudes de recusación presentadas por el licenciado Marchand Quintero**.

En instancia, un total de seis (6) jueces y un (1) Comisionado Especial habían intervenido en el caso sin que se hubiese comenzado a celebrar la vista en su fondo. Con relación a los incidentes que llegaron al Tribunal de Circuito, cuatro (4) paneles íntegros y por lo menos diez (10) jueces individuales se inhibieron de participar en cualquier incidente relacionado al caso. No es difícil prever que todos éestos tropiezos provocaron una situación crítica de atraso para los procedimientos del pleito.

En vista de ello y en aras de acelerar la solución del caso, el 26 de enero de 2000, el Honorable. Carlos Rivera Martínez, Juez Administrador del Centro Judicial de San Juan, asignó el caso mediante orden administrativa al Honorable. Víctor M. Rivera González.

Al día siguiente de serle asignado el caso, el Hon.orable Rivera González coordinó por teléfono una reunión con los abogados de las partes para el 1 de febrero a las 4:00 P.M. El objeto de la vista era evaluar si existía posibilidad de transigir las causas de acción o, en la alternativa, evaluar la disponibilidad de los abogados y las partes para señalar el comienzo del juicio para dentro de las dos (2) semanas siguientes.

Llegado el día de la reunión, el licenciado Marchand Quintero llamó a la oficina del Honorable Rivera González. La llamada dse efectuó aproximadamente a las 12:30 del mediodía. El Juez no se encontraba en ese momento por lo cual el licenciado Marchand Quintero dejó un mensaje con la secretaria expresando que le urgía comunicarse con el magistrado antes de la reunión. Poco después de la 1:00 de la tarde, el Honorable Rivera González llamó al licenciado Marchand Quintero en respuesta al mensaje que éste le dejara. La subsiguiente conversación entre el letrado y el Juez es el hecho particular que se nos refiere para el ejercicio de nuestra jurisdicción disciplinaria.

Al contestar el teléfono, el licenciado Marchand Quintero comenzó por decirle al Juez Rivera González que "no sabía cómo expresarle algo, que antes le había sucedido con otro Juez" [1]; que se le había hecho difícil comunicárselo y que no quería que le cogiera "en frío" durante la vista. Expresó entonces el letrado que cuando informó a su cliente, el señor Gaspar Roca, presidente de El Vocero, que el caso había sido asignado al Juez Rivera González, el señor Roca le indicó, **"espérate un segundito, hablamos después, porque creo que tengo algo"**. El señor Roca quedó en que cotejaría y luego le informaría.

---

[1] Se refería al Hon. Ángel G. Hermida Nadal.

Continuó el licenciado Marchand Quintero relatando al Juez que el señor Roca le informó que sus ejecutorias judiciales en la Sala de lo Criminal durante los años 1998 y 1999 eran objeto de una investigación por parte del periódico. Añadió, que **ya tenían una declaración jurada**. Prosiguió el letrado expresando al Juez que, tras recibir la información del señor Roca, se había comunicado personalmente con los investigadores de El Vocero y **destacó el hecho de que éstos eran ex agentes del Negociado Especial de Investigaciones**. Alegó el licenciado que éstos le informaron que **la investigación "estaba caminando" y que ya tenían documentos, entrevistas y fuentes informativas**.

Como reacción a toda la información que se le develaba por primera vez, el Juez Rivera González le indicó al licenciado Marchand Quintero sentirse agobiado. Además, se defendió asegurando que nunca había utilizado su puesto para algo ilegal o impropio. Finalmente, le confirmó al licenciado Marchand Quintero que la prensa estaba en todo su derecho de investigar para informar responsablemente y lo **invitó a que reprodujera lo expresado vía telefónica en la reunión que se celebraría una par de horas más tarde ese mismo día**.

El licenciado recalcó que le preocupaba **la posibilidad** de que surgieran artículos periodísticos

durante el trámite del caso. **Según el letrado, tanto la eventual publicación como la no publicación de artículos se prestaría a malas interpretaciones**. La publicación de artículos podía verse como que pretendían "palanquear" el criterio profesional del Juez, mientras que la no publicación podía interpretarse como una forma de congraciarse con él.

Llegada la hora de la vista, a las 4:10 de la tarde, se celebró la reunión en el salón de sesiones. Según le había anticipado, el Juez Rivera González invitó al licenciado Marchand Quintero a que expresara para récord lo que previamente le había comunicado por teléfono. Además, lo exhortó a que solicitara un remedio si entendía que era adecuado. El licenciado Marchand Quintero accedió a la invitación resumiendo para el récord el incidente telefónico. Por estar dicha conversación en la médula de la presente controversia, reproducimos la versión del licenciado Marchand Quintero conforme consta en la transcripción de la vista celebrada el 1 de febrero:

> Para efectos de récord, el Lcdo. Juan R. Marchand Quintero. Vuestro Honor, esta mañana, a eso de las 12:05, yo llamé al despacho de Vuestro Honor, no conseguí a nadie. Entonces, lo traté de nuevo como a esto de la una menos veinticinco y su secretaria me indicó que usted estaría de regreso a la 1:00. Puedo estar mal por cinco minutos, pero a la una y cuarto, una y veinte, cojo el teléfono, yo estaba solo en la oficina y era Vuestro Honor. Y le indiqué que esta misma mañana, hoy martes, me indicaron de El

Vocero, que se está haciendo una investigación que envuelve las ejecutorias oficiales de Vuestro Honor. Se remontan a cuando usted estaba en la Sala de lo Criminal. Puedo equivocarme, pero estamos hablando de mediados o fines del '98, hasta mediados del '99. Esa es, por lo que sé, esa es la ventana de estudio.

Yo me preocupé, inmediatamente y llamé, hice el contacto, cosa que nunca hago, con los investigadores de El Vocero, que son ex NIE y están haciendo ellos la investigación. Por lo que ellos me dijeron, tienen documentos, han hecho entrevistas, tienen fuentes informativas y la investigación está caminando.

Como yo le indiqué, Vuestro Honor, eso me pone a mí, inmediatamente, a mí como abogado, en una posición que le quise participar y es la siguiente. Primero, por haber gente que sabe que se está investigando, el no publicarse nada con el devenir del tiempo podría interpretarse como que de alguna forma El Vocero ha tratado con manos de seda o, ¡vamos!, con algún propósito malo de aventajarse. Y por el contrario, si estuviese el caso activo ante usted y decidiesen publicar lo que sea que decidan publicar, pues, la gente va a pensar, incluyendo obviamente la parte demandante y su distinguida representación, van a pensar que lo que estamos haciendo es de alguna forma palanqueando el criterio profesional de Vuestro Honor.

De una manera o de otra, es una situación sumamente delicada. Y, en el plano personal, como yo sé que estas cosas suceden, probablemente es a este servidor que le enviarían el producto final, porque es lo usual, de lo que es un borrador de publicación. Si es que lo hacen, es en esa etapa y antes, que me participarían o me incluirían en el equipo de trabajo para una publicación en específico.

Hablé de esto con mi cliente, con el señor Roca, que es parte demandada y **tengo las instrucciones de hacer el contacto con usted, el cual hice en la conversación telefónica. Porque no es nuestro propósito tampoco radicar sin prevenir a nadie, sin avisarlo, en forma, vamos a decir, informar, como lo estamos**

**haciendo, el hecho de que estamos solicitando la recusación**.

Pero eso, básicamente, Vuestro Honor, esas son mis instrucciones en este momento, **de notificarle al Tribunal, de que dada esta situación, entendemos, lo más sano, lo más sano, saludable, es solicitarle la recusación, cosa que sabemos que bajo la Regla 62 se hace con cierta formalidad. Y como yo le indiqué en la llamada telefónica, yo no tendría reparo alguno en obtener las declaraciones juradas de los que están investigando y poner en un sobre lacrado, en algún sitio donde... en un sitio neutro**, no tiene que ser un notario, puede ser el depósito del Tribunal". (Énfasis suplido.)

Tras concluir el relato del licenciado Marchand Quintero, el juez añadió algunos detalles al recuento los cuales el licenciado aceptó como acertados. Entonces, el Juez procedió a ordenar que los procedimientos se transcribieran y se sometieran a la consideración de este Tribunal para que evaluáramos si la conducta del letrado ameritaba ejerciéramos nuestra jurisdicción disciplinaria. Finalmente, el Juez descalificó al licenciado Marchand Quintero de continuar representando a El Vocero en el caso y manifestó que no habría de inhibirse por no tener prejuicio alguno en relación con los hechos, partes o litigantes en el caso.

Siguiendo eConforme al trámite que de ordinario, se da a toda queja en este Tribunal refirió la queja a, la misma fue referida a la oficina del Procurador General para su investigación y la preparación del informe correspondiente. El Procurador General nos ha sometido un informe detallando los hallazgos de su investigación.

Hemos dado oportunidad de expresarse en torno su contenido al licenciado Marchand Quintero. Además, el Juez implicado, Hon. Victor M. Rivera González, ha presentado iniciativa propia una comparecencia especial en la cual acepta las disculpas que el letrado le presentó en su comparecencia ante nos. Con el beneficio de éstas comparecencias, nos encontramos en posición de resolver.

II

Debemos examinar la conducta del licenciado Marchand Quintero a la luz de dos (2) de los Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX : (1) la prohibición de comunicaciones ex parte (Canon 11); y (2) el deber de evitar hasta la apariencia de conducta impropia (Canon 38).

El Canon 11 de Ética Profesional versa sobre las **indebidas atenciones e influencias** hacia los jueces. Dicho canon dispone:

> Las marcadas atenciones y **la hospitalidad inusitada** por parte de un abogado hacia un juez **traen consigo equívocas interpretaciones sobre los motivos tanto del juez como el abogado y deben evitarse**. Un abogado no debe comunicarse ni discutir con el juez en ausencia de la otra parte sobre los méritos de un caso pendiente, y merece ser reprendido por cualquier acción encaminada a obtener especial consideración personal de un juez. **Sumo cuidado debe tener el abogado que ocupa un cargo público o político en abstenerse de tratar de ejercer influencia o presión indebida** en la tramitación de cualquier asunto

sometido a la consideración judicial. (Énfasis suplido.)

De otra parte, el Canon 38 de los Cánones de Ética Profesional, supra, impone al abogado el deber de evitar hasta la apariencia de conducta impropia. En lo pertinente a la controversia ante nos, dicho canon reza:

El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y **debe evitar hasta la apariencia de conducta profesional impropia**. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia…

Los cánones antes citados deben interpretarse en conjunto tomando en consideración que las Reglas 63.1 y 63.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, los cuales enumeran las circunstancias por las cuales un magistrado debe abstenerse de intervenir en un caso **y establecen específicamente a la recusación como el vehículo procesal que debe utilizar la parte que desee solicitar la inhibición de un juez**.

Cuando una parte entienda que está presente alguna de las circunstancias enumeradas en la en la Regla 63.1 de Procedimiento Civil, supra, y que procede la inhibición del Juez en el caso, lo que debe hacer es presentar inmediatamente una solicitud de recusación formal al Tribunal. Ésta debe ser por escrito y estar jurada. Así lo dispone claramente la Regla 63.2:

Cualquier recusación deberá ser jurada y expondrá los **hechos** en que se funda. Dicha recusación **deberá ser presentada tan pronto el solicitante advenga en conocimiento de la causa** de recusación. (Énfasis suplido.)

A la luz de las disposiciones antes citadas resulta forzoso concluir que la llamada del licenciado Marchand Quintero fue poco prudente. Ello, aun si asumiéramos como cierta la alegación del letrado de que la única intención de la llamada fue tener una "cortesía" con el Juez. Veamos.

El Canon 11 prohibe no sólo las comunicaciones ex parte sobre los méritos de un caso, sino también "la hospitalidad inusitada por parte de un abogado hacia un juez". Además, bajo el Canon 38 podría considerarse contraria a la ética **cualquier comunicación ex parte**, aunque no verse sobre los méritos de un caso, siempre y cuando proyecte una **apariencia de impropiedad**. Ya hemos resuelto que la prohibición establecida en el Canon 11 respecto a las influencias o presiones hacia jueces debe interpretarse "como que prohibe también cualquier actuación que diese lugar a una apariencia de indebidas influencias". Ello, aunque la actuación no haya sido una mal intencionada. Véase In re: Rodríguez Torres, 104 D.P.R. 758, 766 (1976), según modificado en In re: Rodríguez Torres, 106 D.P.R. 698 (1978). En aquella ocasión dictaminamos que:

> [e]l pretender ejercer influencia – expresa o sutil, real o imaginaria– sobre organismos administrativos o judiciales adjudicativos, es incurrir en conducta impropia… <u>In re Rodríguez Torres</u>, supra.

No puede perderse de vista que, aunque el licenciado Marchand Quintero no ocupa cargo público o político alguno, representa en este caso a uno los medios de comunicación de mayor difusión en el país. Es innegable que la prensa ostenta un poder igual o mayor que el de cualquier individuo que en un puesto público o político. Por ello, al igual que éstos, el representante legal de un periódico debe ejercer "sumo cuidado… en abstenerse de tratar de ejercer influencia o presión indebida en la tramitación de cualquier asunto sometido a la consideración judicial." Después de todo, eEl propósito de la restricción incluida en el Canon 11, supra, es evitar presiones por parte de abogados que por cualquier circunstancia se encuentren en una **posición de poder**.

El licenciado Marchand Quintero está plenamente consciente de que se encuentra en dicha posición, así lo admite en su comparecencia ante nos: "si uno es visto como el abogado que representa a un reconocido poder publicitario, entonces cualquier llamada telefónica **podría percibirse como algún tipo de táctica de presión, sin importar su intención o contenido**". Sin embargo, en este caso el contenido de la llamada constituye

precisamente el segundo elemento que mueve nuestro ánimo a resolver que el acercamiento del letrado fue impropio.

El licenciado Marchand Quintero llamó al Juez para alertarle de que se conducía una investigación periodística sobre sus ejecutorias y que con toda probabilidad se publicarían artículos, presumiblemente peyorativos, como resultado en El Vocero. Hasta el momento en que se produce la llamada, ni siquiera existía fundamento para que el Juez se inhibiera. No puede causarle prejuicio o parcialidad alguna al magistrado una situación que desconoce.

El letrado pretende solicitar la inhibición del Juez a base de una mera especulación sobre la posible ocurrencia de un evento futuro: la publicación de artículos como resultado de la investigación de las ejecutorias oficiales pasadas del Juez. Sin embargo, hasta que no se materializa la publicación de los artículos, ni siquiera existe una posible causa de recusación. Como vimos, las Reglas de Procedimiento Civil exigen para que se presente una recusación que el motivo sea **<u>un hecho comprobado</u>**. La probabilidad de ocurrencia de una situación hipotética no es suficiente. En <u>In re Criado Vázquez</u>, 108 D.P.R. 642 , 643 (1979), enfatizamos la importancia de que el abogado que solicita la recusación tenga certeza sobre las bases en que fundamenta una solicitud de recusación, especialmente cuando se invocan fundamentos con

implicaciones éticas para el magistrado. En lo pertinente allí expresamos que:

> El abogado, en el descargo de su responsabilidad como representante de su cliente, debe actuar sin temor cuando tiene motivos **fundados** para solicitar la inhibición de un juez. **Debe, sin embargo, ser cauteloso sobre todo cuando el motivo de inhibición que invoca acusa conducta del juez reñida con la ética judicial**. Y mientras más grave sea la imputación, mayor debe ser su ponderación de las bases de la misma. (Énfasis suplido.) In re Criado Vázquez, Id. a la pág. 643.

Aúun si interpretáramos que el mero hecho de que un periódico investigue la conducta de un juez constituye fundamento suficiente para solicitar su recusación, **cosa que este Tribunal ha rechazadorechazó expresamente** en Meléndez Vega v. Caribbean International News y otros, supra, a la pág. ___1405, el licenciado Marchand Quintero estaba obligado a presentar la recusación formal al foro de instancia **tan pronto adviniera en conocimiento de la causa de recusación**. Véase la Regla 63.2 de Procedimiento Civil, supra.

No es necesario anticiparle a un juez la existencia de una posible causa de recusación. El acto mismo de adelantarle este tipo de información sin haber radicado la moción se presta a diversas interpretaciones. En el mejor de los casos, se puede interpretar como que pretende forzar la inhibición voluntaria del juez sin

que se presente la solicitud formal. En el peor, podría tomarse como una forma de amenaza o de influencia indebida a un juzgador lo cual está tipificado como delito grave bajo nuestro Código Penal.[2]

El propio licenciado Marchand Quintero en su comparecencia ante nos acepta que "independientemente de nuestra intención para hacer la llamada, **la apariencia**

---

[2] El aArt. 247 Del Código Penal, 33 L.P.R.A. sec. 4443, tipifica como delito grave enl intentar:

…influir sobre algún juez, jurado o persona citada o sorteada como tal, o elegida o nombrada como arbitro, o persona autorizada por ley para oír y resolver una cuestión o controversia, por lo que respecta a su veredicto a [sic] **decisión en cualquier causa o procedimiento que se hallare pendiente ante ella o que fuere a ser sometida a sus resolución**, valiéndose a los efectos de algunos de los siguientes métodos:

(a) **Cualquier comunicación**, oral o escrita, tenida con dicha persona, **excepto en el curso ordinario de los procedimientos**.
(b)(a)    …
(b) ...
(c) Cualquier amenaza, intimidación, persuasión o súplica.[…]    ()Énfasis suplido.

En la situación de autos, por ejemplo, podría interpretarse que el Juez Rivera González al ser confrontado con que se pretende solicitar formalmente su recusación, debe resolver si se inhibe o no voluntariamente. Ciertamente se trata de un incidente, "una causa", que el juzgador debe resolver y no resulta irrazonable concluir que la llamada del licenciado Marchand Quintero tiene el potencial de influir indebidamente en esa decisión particular del magistrado de inhibirse motu proprio o negarse a hacerlo para que se le pruebe la necesidad de inhibirse en un procedimiento de recusación ordinario.

**misma de la llamada telefónica no fue la mejor**".   No podemos rebasar la elocuencia con la cual el Juez Rivera González expresó en su resolución de descalificación la diversidad de interpretaciones que puede generar este tipo de acercamiento:

> ¿Qué se pretende con el adelanto de información que posiblemente pueda utilizarse como base para solicitar la recusación?
>
> ¿Se pretende persuadirlo para que se inhiba a iniciativa propia?   ¿Puede considerarse lo expresado como una forma de intimidación o amenaza si el juez expresa su determinación de no inhibirse?   ¿Genera este anticipo de información animosidad o agradecimiento hacia
>
> quien lo provee?

En este caso en particular, nos impresiona que se le adelantaron todos los detalles de la investigación al Juez y se cualificó a los investigadores como expertos en materia de investigación, ex agentes del N.I.E., antes de siquiera mencionar la intención de solicitar la recusación.   Luego, en un estilo más propio de una película de intriga que de cortesía judicial, el licenciado ofrece al Juez poner a su disposición "en un lugar neutro" y en "un sobre lacrado" las declaraciones juradas que apoyan la información que le adelanta.

Todo ello sin el conocimiento de la otra parte y a sabiendas de la posición de poder en la que se encuentra

su cliente y de la trayectoria procesal sumamente accidentada y de retraso que lleva el caso. Además, coinciden éestos elementos con el hecho de que se publicaron artículos periodísticos sobre otros de los jueces que se inhibieron o recusaron anteriormente. Sin que se entienda que este es el curso apropiado, si lo que se pretendía era meramente prevenir al Juez, hubiese bastado una comunicación escueta a los efectos de que presentarían una recusación basada en que existía una investigación periodística en curso.[3]

No podemos sino concluir que, cuando menos, la comunicación iba dirigida a forzar la inhibición voluntaria del Juez Rivera González y a dilatar, intencionalmente o no, aún más la resolución final del caso. En su versión de los hechos vertida para récord, el licenciado Marchand Quintero establece claramente que sus instrucciones eran a los efectos de "**solicitarle**" al propio Juez, mediante esa llamada, "**su recusación**".

---

[3]  En <u>In re Rivera Cruz</u>, 126 D.P.R. 768 (1990) este Tribunal mediante resolución declinó ejercer su jurisdicción disciplinaria ante una situación parecida a la del caso de autos. Allí, sin embargo, la situación de hechos con la cuál nos enfrentamos aquel caso y entendemos, sin refrendar es claramente distinguible de la conducta del licenciado Marchand Quintero.

Primero, y sin que se entienda que estamos avalando este proceder, allí se comunicó de forma indirecta la intención de presentar una recusación si el juez implicado no se inhibía voluntariamente. En aquella ocasión se telefoneó **al Juez Administrador del Tribunal** para que éste a su vez transmitiera el mensaje al juez a ser recusado. Cabe señalar, que probablemente le hubiese tocado a dicho Juez Administrador dilucidar inicialmente el destino de una recusación presentada formalmente. En segundo lugar, en aquel caso los fundamentos invocados como base para la inhibición **eran de pleno conocimiento del juez** a ser recusado. En el caso de autos, el Juez

Entendemos que lo que el licenciado pretendía era solicitarle su **<u>inhibición voluntaria</u>** (ya que sólo otro juez podría conceder una recusación) y, si fallaba esa propuesta, presentar una recusación formal. ¿Hubiese presentado el licenciado Marchand Quintero su solicitud formal de recusación aunque el Juez se hubiese inhibido voluntariamente esa tarde? Creemos que no.

Si se tienen motivos sólidos para recusar a un juez lo más correcto es presentarlos primero de formal y públicamente ante el Tribunal. Ello protege la imagen e integridad de los jueces de recusaciones infundadas y evita interrupciones innecesarias a los procedimientos que se ventilan ante los jueces recusados. En la medida en que la Regla 63.2 de Procedimiento Civil exige que la solicitud de recusación sea escrita, jurada y radicada ante el tribunal, la parte que recusa y su representante legal quedan sujetos a sanciones por solicitudes frívolas.

Si se quiere tener una consideración con el juez, puede presentáarsele copia de cortesía de la recusación o anunciarle en corte abierta el hecho de su presentación. Avalar que se informe verbal e informalmente a un juez de la intención y fundamentos para solicitar una recusación no soólo se presta a que se trate de amedrentare al magistrado con razones infundadas, sino que resulta extremadamente conveniente

---

Rivera González ignoraba por completo la existencia de las supuestas

para la parte y su abogado pues les brinda la oportunidad de tratar depermite lograr la inhibición deseada sin tener que asumir latomar responsabilidad pública quepor sus alegaciones implican. No debe olvidarse que en ocasiones los fundamentos invocados como causas de inhibición ponen en duda no soólo la capacidad del juez para resolver imparcialmente una controversia particular, sino además su integridad profesional y personal. Resulta contrario a la imagen del tribunal y a la mejor administración de la justicia discutir estos asuntos a puertas cerradas.

Diferimos del licenciado en que la comunicación ex parte evita al magistrado "la triste situación de ser abordado en corte abierta y ante terceros respecto a un asunto tan delicado". El que exista una causa para la inhibición o se presente una recusación no debe ser una situación vergonzosa para un juez. Por el contrario, se trata simplemente la utilización de una herramienta más del ordenamiento procesal para garantizar la solución justa, rápida y económica de los pleitos. Lo que se pretende es que no quede sombra de duda alguna que pueda minar la confianza pública en el sistema de impartir justicia. La transparencia de la gestión judicial debe ser motivo de orgullo para un juez y la no participación en un caso es sólo un deber más necesario para el descargo adecuado de sus funciones.

---

causas de inhibición informadas por el licenciado Marchand Quintero.

En resumen, resolvemos que resulta impropia la comunicación ex parte de un abogado dirigida a anticiparle a un juez la intención y fundamentos para solicitarle su inhibición mediante presentación de recusación. Tal tipo de acercamiento telefónico ex parte de un abogado a un juez viola los Cánones 11 y 38 de Ética Profesional. El acercamiento telefónico ex parte del licenciado Marchand Quintero violó los Cánones 11 y 38 de Ética Profesional.

No obstante, reconocemos que en la medida en que este Tribunal declinó ejercer su jurisdicción disciplinaria ante hechos similares en In re: Rivera Cruz, 126 D.P.R. 768 (1990)supra, nuestro curso de acción allí pudo haber creado en algunos abogados la impresión de que dicha conducta resultaba permisible. Igualmente, ha influido nos ha impresionado favorablemente en nuestro ánimo tanto el que el letrado haya aceptado la apariencia impropia de sus actos, como el que éste se haya disculpado formalmente con el magistrado Rivera González. NIgualmente no hemos podido ignorar el hecho que en veintiséeis (26) años de práctica privada activa de la abogacía, éste sea el primer asunto disciplinario que se presenta contra el licenciado Marchand Quintero.

Por los fundamentos antes expuestconsignados, pautamos la norma aquí consignada para que se aplique de forma prospectiva.se limita En consecuencia, intimamos

a la clase togada de Puerto Rico a no incurrir en este tipo de conducta. Se apercibe que el incumplimiento con lo aquí pautado podría dar lugar al ejercicio de nuestra jurisdicción disciplinaria y a la imposición de serias sanciones.la sanción disciplinaria del licenciado Marchand Quintero a una amonestación y un apercibimiento de incurrir en este tipo de conducta en el futuro.

Se dictará sentencia de conformidad. .

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Juan R. Marchand Quintero

AB-2000-21
AB-2000-14

SENTENCIAPER CURIAM

San Juan, Puerto Rico a          14  de  septiembre de 2000

> *La buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal.  Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX Parte II Criterio General.*

Los incidentes que motivaron la queja de epígrafe ya han sido examinados por este Tribunal en el caso de Mélendez Vega v. Caribbean International News y otros, res. el 29 de junio de 2000, 2000 TSPR _____, 2000 JTS ___.  En aquella ocasión sostuvimos la corrección de la descalificación del Licenciado Juan R. Marchand Quintero dictada por el Juez de Primera Instancia Hon. Víctor Rivera González en el trámitePor los fundamentos expuestos en la Opinión Per Curiam que antecede y con relación a la acción disciplinaria contra el licienciado Marchand Quintero, se dicta sentencia ordenando el archivo del caso.

La norma antes consignada se aplicará de forma prospectiva. Intimamos a la clase togada de Puerto Rico a no incurrir en este tipo de conducta. Se apercibe que el incumplimiento con lo aquí pautado podría dar lugar al ejercicio de nuestra jurisdicción disciplinaria y a la imposición de serias sanciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria de Tribunal Supremo. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.


                    Isabel Llompart Zeno
                Secretaria del Tribunal Supremo